**Li Hua LIN,\* Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE; Alberto R. Gonzales,\*\* Attorney General, Respondents.**

No. 02–4713–AG.

United States Court of Appeals, Second Circuit.

Argued: March 1, 2005.

Decided: June 28, 2006.

---

\* The Clerk is requested to modify the official caption to reflect the correct order of Lin's name.

\*\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

Bruno Joseph Bembi, Hempstead, N.Y., for Petitioner.

Charles E. Roberts, Assistant United States Attorney, for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, N.Y., for Respondents.

Before: CALABRESI, CABRANES, and POOLER, Circuit Judges.

CALABRESI, Circuit Judge.

Petitioner Lin Li Hua (No. A77–547–893), a native and citizen of the People's Republic of China, asks us to review an order of the BIA summarily affirming the IJ's denial of her application for political asylum and for withholding of removal under § 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988),

# 102

1465 U.N.T.S. 85. IJ Gabriel C. Videla denied Lin's asylum application on the ground that Lin had not carried her burden of proving that she had applied for asylum within one year of entering the United States, as required by 8 U.S.C. § 1158(a)(3). The IJ also held, in the alternative, that Lin's claim that she had been forcibly sterilized by the Chinese government was not credible. As such, the IJ held, Lin had not made out a claim for asylum and, *a fortiori*, for withholding of removal under the INA. Moreover, the IJ concluded that Lin had not shown that it was more likely than not that she would be subject to torture if she returned to China, and was therefore ineligible for CAT relief.

Based on our Court's decision in *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144 (2d Cir.2006), we hold that, insofar as Lin challenges the IJ's credibility finding as it related to her evidence of timely filing, we are without jurisdiction to review the IJ's determination that Lin's asylum application was untimely. To the extent that Lin challenges that determination on due process grounds, we have jurisdiction to hear Lin's claim, *see id.* at 155, but her contention is without merit. As to Lin's application for withholding of removal under the INA, despite inconsistencies in Lin's testimony, the errors in the IJ's analysis lead us to grant Lin's petition for review and to remand to the BIA for reconsideration of her claim.

## Background

Lin testified to the following facts at her removal hearing of May 1, 2000. Lin and her husband, Lin Dun Ji, were married on March 16, 1985.[1] They have two children together, a boy born October 15, 1988 and a girl born May 7, 1991. Three or four

months after the boy was born, Chinese officials informed Lin that she needed to have an intrauterine device ("IUD") inserted. She refused and was fined 3,000 yuan, which her father-in-law paid after officials threatened to remove items from her house. Authorities returned some time later and again threatened to "take away everything from the house" unless Lin had an IUD inserted. She acquiesced. Lin testified inconsistently and confusingly concerning the date on which the IUD was inserted, sometimes giving a date in 1989, and sometimes one in 1991.

Lin found out she was pregnant with her second child in August 1990. Asked by her attorney how she was able to become pregnant with her second child with an IUD inserted, Lin replied, "I did not even know when the IUD was missing." Lin lived with her aunt an hour away from her home during the second pregnancy, but after Lin's daughter was born, family planning officials found out about the baby from people talking about the birth. Cadres visited Lin's home in order to have her sterilized, but since they did not find her there, they took her husband away instead. When Lin found out that her husband had been detained and threatened with beatings, she returned home immediately and turned herself in.

Lin was taken to the hospital, where she was forcibly sterilized. She described the procedure in graphic detail. She said that the medical staff administered partial anesthesia, but that it was still an intensely painful procedure. During this procedure, doctors held down her hands and tied down her feet, but did not secure any other parts of her body.

Two or three months after the sterilization, family planning officials visited Lin's

---

1. Lin testified that she did not obtain a marriage certificate until 1994 because she was too young to get one at the time of her marriage.

home to collect a second fine, for 4,000 yuan. Her husband got into a fight with the officials and subsequently went into hiding. When the officials could not find him, Lin says, they destroyed his car.[2] Lin said she left China in 1998, and arrived in the United States on October 23 of that year. She testified that she did not leave earlier because her daughter was too young. She said she fears going back to China because she will be detained and beaten there upon her return. Lin filed her application for political asylum on June 7, 1999.

The IJ denied that application as untimely on the ground that Lin had failed to produce sufficient evidence that she had filed for asylum within one year of entering the United States. The IJ also held that Lin's claim that she had been forcibly sterilized in China was not credible. Specifically, the IJ said that Lin's demeanor and testimony suggested that she was not testifying from lived experience but was instead relating back information that she had not yet successfully committed to memory. Second, certain aspects of Lin's testimony, such as the alleged insertion of an IUD and her husband's detention, were not mentioned in her asylum application and certain affidavits submitted in support of her claim. Third, the household registration document Lin submitted, which indicated that her son was registered in December 1999 and her daughter in 1993, was inherently unreliable and contradicted portions of her testimony. Finally, and "most critical[ly]," according to the IJ, Lin's account of the sterilization procedure performed on her was not credible because, if Lin was in fact experiencing the pain she described, and if only her hands and feet were tied down, it would not be possible for doctors to perform so precise an operation. Moreover, it would be im-

plausible for China to perform sterilizations with such bluntness if the goal was to sterilize successfully.

Since the IJ found Lin's account of coerced family planning incredible, he found that she could not meet her burden of showing either past persecution or a well-founded fear of future persecution, as she must in order to be eligible for asylum. Because the standard for withholding of removal under INA § 241(b)(3) is a more stringent standard than for asylum, *see* 8 C.F.R. § 208.16(b); *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004), Lin also could not establish eligibility for withholding. Finally, the IJ found that Lin's statements as to the possibility that she would be beaten upon returning to China were too "vague" to establish eligibility for CAT relief.

Lin appealed to the BIA, which, in an order dated October 22, 2002, affirmed without opinion the IJ's decision. *See* 8 C.F.R. § 1003.1(e)(4). Lin timely petitioned for review with our Court. She argues that the IJ's determination that she did not meet her burden of establishing the timeliness of her application was arbitrary and, therefore, violates due process. Lin also contends that the IJ committed numerous errors in arriving at his adverse credibility determination, and that his analysis of her CAT claim misapplied the standard applicable to such claims.

## Discussion

### I.   Timeliness of Lin's Asylum Claim

Subject to certain exceptions not relevant here, the INA requires that an asylum-seeker demonstrate "by clear and convincing evidence" that she has filed her application within one year of entering the country. 8 U.S.C. § 1158(a)(2)(B). Lin

---

**2.** Lin's husband was in the United States at   the time of her hearing.

testified that she entered the United States on October 23, 1998. She also submitted an affidavit from her husband in which he stated that they reunited in the United States in October 1998. Since Lin applied for asylum in June 1999, her application would be timely if her testimony and her husband's affidavit were credited. The IJ held, however, that Lin's testimony, standing alone, was inadequate in light of his adverse credibility finding, and that her husband's affidavit "must be given diminished weight" because he was not present in the courtroom and available for cross-examination.

■ The INA provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2) ]." 8 U.S.C. § 1158(a)(3). We recently construed this language to deprive our Court of jurisdiction to review "discretionary and factual determinations" made by an IJ or the BIA pursuant to § 1158(a)(2). *Xiao Ji Chen*, 434 F.3d at 154. To the extent that Lin challenges the IJ's credibility determination as it relates to her claimed date of entry, therefore, we are without jurisdiction to review his rejection of her application as untimely. *See Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) ("Generally, courts have treated credibility questions in deportation proceedings as questions of fact ....").

Lin styles her timeliness argument, however, not as a challenge to the IJ's credibility determination, but as a constitutional claim. Lin contends that due process requires that an IJ's determination that an asylum-seeker has not met her burden of proof as to timeliness "be based on some evidentiary quantity and not on the IJ's own unsupported and arbitrary opinion." Petr.'s Br. at 16. Lin's argument amounts to a claim that the IJ held her to an impermissibly high burden of proof, and

that this violates her constitutional right to due process.

■ Since Lin challenges the constitutionality of the IJ's decisionmaking process, we have jurisdiction to review her claim in light of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, 302 ("REAL ID Act"). *See Xiao Ji Chen*, 434 F.3d at 154–55 (interpreting REAL ID Act § 106(a)(1)(A)(iii), codified at 8 U.S.C. § 1252(a)(2)(D), as providing jurisdiction in the Court of Appeals to review "constitutional claims or matters of statutory construction," even in the context of one-year bar determinations). We have not had occasion to decide whether an IJ's discretionary determination that an alien failed to proffer credible evidence adequate to her burden of proof may constitute a due process violation. *Cf. Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 659 (9th Cir.2003) (finding a due process violation where the BIA made an adverse credibility finding sua sponte on direct review, after the IJ made no such finding, because the BIA had failed to "provid[e] [the petitioner] with notice that his credibility was at issue and in what specific respect his credibility was being questioned"). But assuming *arguendo* that an IJ's egregious disregard of applicable standards or procedures in making a credibility determination might acquire constitutional dimension—a determination we need not, and hence do not, make here—we find no such violation in this case. Under the circumstances presented, we cannot say that the IJ's determination that Lin failed to prove her date of entry by "clear and convincing evidence" was arbitrary or "denied [her] a full and fair opportunity to present her claims." *Xiao Ji Chen*, 434 F.3d at 155; *accord Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir.2004) ("Due process requires that an applicant receive a full and fair

hearing which provides a meaningful opportunity to be heard.").

■ Because we do not disturb the IJ's finding that Lin's asylum application is untimely, our review is limited to Lin's claim for withholding of removal under the INA.[3] *See Xiao Ji Chen,* 434 F.3d at 155 ("[E]ligibility for withholding of removal is not subject to 8 U.S.C. § 1158(a)(2)(B)'s one-year bar and, accordingly, must be considered by the BIA regardless of the timeliness of the initial asylum request.").

## II. Our Standard of Review of Lin's Withholding Claim

■ In order to qualify for withholding of removal under the INA, an applicant must establish that her "life or freedom would be threatened in [the] country [of removal]" based on "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see* 8 C.F.R. § 1208.16(b). A rebuttable presumption of withholding eligibility attaches to an applicant who demonstrates that she suffered past persecution based on one of the enumerated grounds. *See Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 339 (2d Cir.2006). Absent a showing of past persecution, an applicant for withholding must show that it is "more likely than not" that she would suffer future persecution based on a statutory ground if returned to the country of removal. *See id.; Yueqing Zhang v. Gonzales,* 426 F.3d 540, 544 (2d Cir.2005) (citing 8 C.F.R. § 208.16(b)).

■ In accordance with our international human rights obligations, withholding of removal is a mandatory form of relief under the INA. Once an alien establishes her entitlement to withholding she cannot, with certain exceptions not relevant to this case,[4] be removed to the country in which she is likely to be persecuted. *See Wu Zheng Huang v. INS,* 436 F.3d 89, 95 (2d Cir.2006).

■ Our review of the IJ's factual findings, including his adverse credibility determination, is for substantial evidence.[5] *Xue Hong Yang v. U.S. Dep't of Justice,* 426 F.3d 520, 522 (2d Cir.2005). It remains challenging, however, to determine the appropriate course to take when the IJ's factual finding is based in part—but only in part—on what we have come to regard as analytic errors. Such errors include, for example, "a misstatement of the facts in the record [or] bald speculation

---

**3.** Lin raises a claim of persecution based on "imputed political opinion" for the first time in her petition to our Court, arguing that she "faces a clear probability of persecution based on her politically motivated, illegal departure from China." Petr.'s Br. at 39. Because Lin failed to raise any such argument before either the IJ or the BIA, she has failed to exhaust her administrative remedies within the meaning of 8 U.S.C. § 1252(d)(1). Accordingly, we do not consider that claim on appeal. *See Cervantes–Ascencio v. INS,* 326 F.3d 83, 87 (2d Cir.2003) (per curiam).

In her petition for review, Lin also challenges the IJ's denial of her claim for CAT relief. Although Lin presented this claim before the IJ, she failed to do so on her direct appeal to the BIA, instead challenging only the IJ's denial of her claim for asylum of withholding of removal under the INA. Accordingly, because Lin failed to exhaust her CAT claim before the BIA, we deem it waived. *See Kambolli v. Gonzales,* 449 F.3d 454 (2d Cir. May 26, 2006), 2006 U.S.App. LEXIS 13143, at *8 (per curiam).

**4.** *See* 8 U.S.C. § 1231(b)(3)(B) (enumerating the statutory exceptions to mandatory withholding where the Attorney General determines that the alien has persecuted others, has committed certain serious crimes, or poses a danger to national security).

**5.** Where, as here, the BIA summarily affirms an IJ's decision, we review the IJ's decision directly as the final agency determination. *Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir.2006).

or caprice," *Zhou Yun Zhang v. INS,* 386 F.3d 66, 74 (2d Cir.2004); unreasonable demands for corroborative evidence where the applicant is otherwise credible, *see Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 153–54 (2d Cir.2003); *Diallo v. INS,* 232 F.3d 279, 285–90 (2d Cir.2000); overreliance on airport interviews and accounts thereof that do not bear indicia of reliability, *see Ramsameachire,* 357 F.3d at 180–81 (discussing why some airport interviews are more reliable than others); and reliance on inconsistencies that are not dramatic and self-evident and were never brought to an alien's attention, *see Ming Shi Xue v. BIA,* 439 F.3d 111, 118 (2d Cir.2006).

Congress has specified that an IJ's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Xiao Ji Chen,* 434 F.3d at 156–57; *Zhou Yun Zhang,* 386 F.3d at 73. The Second Circuit interprets this statutory standard to mean that the factual findings of an IJ merit deference so long as they are supported by substantial evidence in the record. *See, e.g., Xiao Ji Chen,* 434 F.3d at 156 & n. 9; *see also Diallo,* 232 F.3d at 287 (stating that the agency's factual findings "must be upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole" (internal quotation marks omitted)). And, where an IJ's errors are relatively minor in light of the record as a whole, the understandable inclination is to assume the errors are "harmless" and deny review, just as we would affirm a district court judgment tinged with errors that do not affect the ultimate outcome of the proceeding. *See United States v. Dominguez Benitez,* 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

We must be equally mindful, however, of the instruction of *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that "a judicial judgment cannot be made to do service for an administrative judgment." *Id.* at 88, 63 S.Ct. 454 (quoted in *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam)). It is precisely because factfinding in both the asylum and the withholding contexts is expressly committed to the discretion of the Executive Office of Immigration Review ("EOIR") that, when those findings rely upon legal errors, the appropriate remedy is generally to vacate those findings and remand to the BIA for reconsideration of an applicant's claim. *See Chenery Corp.,* 318 U.S. at 94, 63 S.Ct. 454 ("[I]f the [administrative] action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law."); *Twum v. INS,* 411 F.3d 54, 61–62 (2d Cir.2005).

Our Court's asylum and withholding jurisprudence, then, remains on a continuing course of reconciliation between the twin commands neither to disturb substantially supported factual determinations nor to let stand determinations that rely, in whole or in part, on legal error. Two distinct but related formulations have emerged in recent cases. In *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391 (2d Cir.2005), a case dealing with factfinding primarily in an asylum context, we recognized, for the first time explicitly, that "not every minor error requires a remand." *Id.* at 401. The *Cao He Lin* court stated that, notwithstanding identified errors, remand to the BIA would be futile in at least three circumstances: first, "if the IJ explicitly adopts an alternative and sufficient basis for her determination;" second, "where the IJ or BIA's reliance on an erroneous aspect of its reasoning is so tangential that there is no realistic possibility that the outcome would be different on remand;"

and third, where "overwhelming evidence supporting the administrative adjudicator's findings makes it clear that the same decision would have been reached in the absence of the errors." *Id.* at 401–02.

More recently, in *Xiao Ji Chen,* a case dealing with factfinding in a withholding of removal context, we reaffirmed the general rule of *Cao He Lin* that "an error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error." *Xiao Ji Chen,* 434 F.3d at 161. Because (1) the panel in *Cao He Lin* ultimately directed a remand, and (2) the *Cao He Lin* panel rejected almost all of the IJ's credibility analysis, finding only one element of it to be permissible, the *Xiao Ji Chen* panel characterized as "dicta" the *Cao He Lin* panel's precise articulation of the circumstances in which remand would be futile. *Id.* The *Xiao Ji Chen* panel relied instead on somewhat broader language from *Cao He Lin* and said that "[t]he overarching test for deeming a remand futile . . . is when the reviewing court can 'confidently predict' that the IJ would reach the same decision absent the errors that were made." *Id.* at 162 (quoting *Cao He Lin,* 428 F.3d at 395).

As the *Xiao Ji Chen* Court recognized, it was not bound by any dicta in *Cao He Lin. See id.* at 161 (quoting *United States v. Garcia,* 413 F.3d 201, 232 n. 2 (2d Cir.2005) (Calabresi, J., concurring)) ("[Dicta] is not and cannot be binding. . . ."). It was bound, and all future panels are bound, only to *Cao He Lin's* holding. Thus, in cases which involve facts analogous to those in *Cao He Lin,* a subsequent panel is required not to deny review on futility grounds, but in cases with dispositively different facts, it need not do so.

█ Just as the *Xiao Ji Chen* panel was bound to the holding of *Cao He Lin,* so are we, of course, bound to the holdings of *both* cases. We have little difficulty, however, concluding that the two cases are reconcilable. Although *Xiao Ji Chen* employs broader language than *Cao He Lin,* the differences between the two standards are, in fact, "more a matter of linguistics than law." *Id.* at 162. Taken together, *Cao He Lin* and *Xiao Ji Chen* establish that remand to the BIA is futile a) when the IJ articulates an alternative and sufficient basis for her determination; b) when her reliance on the erroneous aspect of her reasoning is substantially tangential to her non-erroneous findings; or c) when overwhelming evidence in the record makes it clear that the same decision is inevitable on remand, or, in short, *whenever* the reviewing panel is confident that the agency would reach the same result upon a reconsideration cleansed of errors.[6]

---

**6.** We note one important difference in the factual postures of *Cao He Lin* and *Xiao Ji Chen* that may be relevant to future cases. As indicated above, our review in *Xiao Ji Chen* involved factfinding in a withholding of removal context, whereas *Cao He Lin* primarily involved factfinding in an asylum context. *See Xiao Ji Chen,* 434 F.3d at 156 n. 8 (stating that the IJ had "conducted his adverse credibility analysis as part of his denial of petitioner's asylum application on the merits," but concluding that the IJ's analysis "appl[ied] equally to the IJ's denial of petitioner's application for withholding of removal"); *Cao He Lin,* 428 F.3d at 398 (stating that the IJ denied the petitioner's asylum claim on the merits, followed by an automatic denial of his withholding claim based on the "higher standard" applicable to such claims). As our Court has explained, "[a] claim for withholding of [removal] is factually related to an asylum claim, but the applicant bears a heavier burden of proof to secure the former relief." *Zhou Yun Zhang,* 386 F.3d at 71. While an applicant need establish past persecution or a "well-founded fear" of future persecution to be eligible for asylum, in order to be granted withholding of removal, she needs to show past persecution or a "clear probability" that, if returned to her country of origin,

**108**

We reiterate, then, that *Cao He Lin* and *Xiao Ji Chen* together provide a nonexclusive—but nevertheless binding—list of scenarios under which remand to the BIA is futile despite errors made by an IJ. These scenarios exemplify those occasions on which a reviewing panel may "confidently

her life or freedom would in fact be threatened. *See Ivanishvili*, 433 F.3d at 339; *Zhou Yun Zhang*, 386 F.3d at 71. Accordingly, in cases that turn on the *sufficiency* of the evidence presented, as opposed to the *credibility* of a petitioner's claim—for example, where an applicant presents otherwise credible testimony but is faulted for providing "vague" testimony or insufficient corroborative documentation, *see Jin Shui Qiu*, 329 F.3d at 153; *see also Diallo*, 232 F.3d at 290 (distinguishing an IJ's inquiry into "whether the applicant's testimony is credible" from the determination of "whether the applicant has met his or her burden of proof")—the relative confidence of a panel in determining that remand would be futile in a particular withholding case will be commensurate with the relative difficulty of proving withholding eligibility. Thus, when reviewing an IJ's finding that a petitioner failed to provide sufficient evidence to meet her burden of proof, it may be possible for the same panel hearing the same case with the same errors to be confident enough to deny review of a withholding claim but still see fit to remand for reconsideration of an asylum claim based on identical facts. However, we hasten to add that, in such cases, the *legal standard* of futility remains the same whether the case primarily involves asylum or withholding of removal; it is the *outcome* (*i.e.*, the panel's determination that remand is, or is not, in fact futile) that may change based on the procedural and factual posture of the case presented.

7. Earlier cases analyzing whether it was appropriate to vacate and remand an IJ's decision that was based in part on errors have described our test as whether we can be confident that *the IJ* would reach the same result on remand absent the errors. *See, e.g., Xiao Ji Chen*, 434 F.3d at 162; *Cao He Lin*, 428 F.3d at 395. Although we have no reason to disturb the language of either case, we note that the question of in *whose* decision we must have confidence on remand remains a potentially complicated one.

predict" that the agency[7] would reach the same conclusion absent the identified errors. Having discussed the appropriate standard of review of an IJ's factual findings, we turn to the adverse credibility finding in Lin's case.

On the one hand, a remand from our Court is always directly to the BIA, and the BIA may act on its own or it may remand to the same or to another IJ. *See Paramasamy v. Ashcroft*, 295 F.3d 1047, 1055 n. 4 (9th Cir.2002) (noting that "assignment of an immigration judge is within the province of the Attorney General"); *cf. Wu Zheng Huang*, 436 F.3d at 101–02 ("strongly urg[ing]" that a case be assigned to a different IJ "[s]hould the BIA find it appropriate to remand further"). This would indicate, seemingly, that it is the BIA whose decision on remand we must be sure of.

On the other hand, when the BIA summarily affirms an IJ's decision, it is the IJ's decision that we review directly as "the final agency determination." *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir.2006); 8 C.F.R. § 1003.1(e)(4)(ii). And there's no guarantee that, in affirming without opinion, the BIA has agreed with any particular finding of the IJ, inasmuch as a summary affirmance indicates only that the BIA "approves the *result* reached in the decision below" and "does not necessarily imply approval of all of the *reasoning* of that decision." *See* 8 C.F.R. § 1003.1(e)(4)(ii) (emphases added); *cf. id.* (stating, however, that a summary affirmance "does signify the Board's conclusion that any errors in the decision of the immigration judge or the Service were harmless or nonmaterial").

It might be awkward in some cases, therefore, for our focus to be on whether we are confident that the BIA would come out the same way regardless of an error, when we do not know to what degree, *if at all*, the BIA relied on that error in the first place.

We need not, however, delve more deeply into this matter here. Because we would reach the same conclusion in this case regardless of whether we consider futility in the context of re-evaluation by the IJ or the BIA, it is enough for us simply to evaluate whether "the agency," broadly speaking, would reach the same result on remand.

### III. The IJ's Adverse Credibility Finding

The IJ pointed to several legitimate grounds for skepticism as to Lin's account of her experiences with China's coercive family planning policies. For example, the IJ was troubled that, upon observing Lin's testimony, he "ha[d] the impression that [Lin was] not testifying from actual experience [but] rather ... [wa]s attempting to relate back information which she ha[d] not reduced to memorization very successfully." In reviewing adverse credibility determinations, "[w]e give particular deference to [those] that are based on the adjudicator's observation of the applicant's demeanor, in recognition of the fact that the IJ's ability to observe the witness's demeanor places her in the best position to evaluate whether apparent problems in the witness's testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question." *Jin Chen v. U.S. Dep't of Justice,* 426 F.3d 104, 113 (2d Cir.2005); *accord Zhou Yun Zhang,* 386 F.3d at 73.

We can be still more confident in our review of observations about an applicant's demeanor where, as here, they are supported by specific examples of inconsistent testimony. *See Zhou Yun Zhang,* 386 F.3d at 74. The IJ referenced two such examples, both of which lend credence to an adverse credibility finding. First, the IJ noted that when Lin was asked how long after the birth of her second child she was sterilized, she gave a precise date, May 30, 1991. It took additional questioning to adduce that the sterilization occurred 20 days after the birth of Lin's daughter. The IJ took this as "suggestive that [Lin][wa]s not testifying from actual experience." It is possible, of course, that Lin gave a precise date because she misunderstood the question she was being asked. But it is not unreasonable for an IJ to conclude that, coupled with his observations of the applicant's demeanor, such a response indicates that the applicant is testifying from a script rather than from experience.

Second, and more significantly, the IJ noted that Lin's testimony as to the year of her IUD insertion was inconsistent. Lin variously testified that she had the IUD inserted in February 1991 and sometime in 1989. In light of the fact that Lin was several months pregnant with her second child in early 1991, the IJ legitimately took Lin's confusion as to the date of the IUD insertion as evidence that she was "not testifying from actual experience."

The IJ, properly, also relied on various inconsistencies in the household registration documents that Lin submitted. Those documents indicated that her daughter—her second-born child—was registered in August 1993 but that her son was not registered until December 1999, at the couple's home address in China, when Lin and her husband were both in the United States. Lin testified that she registered her son in November 1988 and her daughter in May 1991, approximately one month after each child's birth. When the IJ asked Lin why the documents did not comport with her testimony, she first said that she did not remember exactly when her children were registered. Lin then attempted to clarify by saying a mistake was made when she was issued new registration documents. The IJ found this explanation non-credible and "vague," a finding we have no cause to disturb.

The IJ also found Lin incredible based on perceived inconsistencies between her written asylum application and her testimony. In particular, Lin left out of her I-589 any mention of having an IUD inserted. Even if Lin was not truthful as to having an IUD inserted involuntarily, this would not, of course, speak directly to

**110**

whether she was forcibly sterilized, which is the heart of Lin's withholding claim. *See In re Y–T–L–,* 23 I. & N. Dec. 601, 607 (BIA 2003) (holding that coerced sterilization is a "permanent and continuing act of persecution"); *see also Secaida–Rosales,* 331 F.3d at 308 (an adverse credibility finding may not rest on inconsistencies that "do not concern the basis for the claim of asylum or withholding, but rather matters collateral or ancillary to the claim"); *Diallo,* 232 F.3d at 288 ("relatively minor and isolated" discrepancies in testimony "need not be fatal to credibility" where the disparities "do not concern material facts").

■ Lin's omission of her IUD insertion, though, is not merely ancillary or collateral to the persecution complained of, but is rather an important episode in a narrative of continuing persecution at the hands of family planning officials. *See Xu Duan Dong v. Ashcroft,* 406 F.3d 110, 112 (2d Cir.2005) (per curiam) (finding no error where an adverse credibility finding was based in part on an omission that bore a "legitimate nexus" to the petitioner's claim of persecution). Although we might question placing dispositive weight on Lin's neglecting to mention the IUD insertion in her initial application, it was not error for the IJ to consider it in making his credibility determination.

■ We are less comfortable with the IJ's reliance on another omission: Lin's husband's failure to mention in his affidavit in support of her application that he had been detained for one day before her sterilization—an event that Lin herself testified to in detail before the IJ and which she included in her supplemental affidavit in support of her asylum application. Given Lin's extensive testimony on this matter, the omission of potential persecution of Lin's husband in his own affidavit—an omission, incidentally, that was mentioned on the record for the first time in the IJ's decision—lies within the category of inconsistencies which "do not concern the basis for the claim of asylum or withholding, but rather matters collateral or ancillary to the claim." [8] *Secaida–Rosales,* 331 F.3d at 308. The IJ's reliance on this omission, therefore, was error.

Were overreliance on a tangential omission the sole error the IJ made in reaching his adverse credibility determination, this case would likely be akin to those cases in which we have held that, despite some errors, remand to the BIA was futile. *See, e.g., Singh v. BIA,* 438 F.3d 145, 148–50 (2d Cir.2006) (per curiam); *Qyteza v. Gonzales,* 437 F.3d 224, 227–28 (2d Cir.2006) (per curiam); *Xiao Ji Chen,* 434 F.3d at 159–60. The IJ's most troubling finding in this case, however, is also the one that, by his own description, he relied on as "the most critical issue here." And the fact that the IJ stated that this finding was key to his credibility determination is crucial under the futility analysis of both *Cao He Lin* and *Xiao Ji Chen,* because by his own account the IJ relied on that finding as the "most critical" element of his credibility determination.

■ Lin testified that she was forcibly sterilized with only her hands and feet tied down, and that the procedure was intensely painful. The IJ found this account "absolutely" incredible, concluding that, based on the "judicial[ly] notice[d] ... fact that an individual's ... thigh muscles ... are

---

8. We emphasize, however, that, as with Lin's IUD insertion, the fact of her husband's detention itself was not merely ancillary or collateral to the persecution complained of, but rather was an important episode in a narra-tive of continuing persecution at the hands of family planning officials, inasmuch as Lin consistently testified that her husband's detention was the very reason she returned home and submitted to sterilization.

... probably [the] strongest muscles in a person[']s body[,][a]ny person who would be subjected to the pain that [Lin] described would involuntarily react to that by vigorously moving her hips or thighs, which of course would mean that it would be impossible for the doctor to perform such a precise surgical incision [and] to locate the fallopian tubes and proceed to cut them in such a precise manner." Moreover, the IJ said, he "would further find difficult to believe that in China sterilization procedures would be performed in such a manner [because] it would make no sense to sterilize individuals under those conditions where most of the time the sterilization would not be possible to complete successfully." Accordingly, the IJ concluded that he "absolutely ... under no circumstances [could] find [Lin's] testimony as to how this sterilization was performed to be credible."

This rationale amounts to speculation upon speculation. The IJ pointed to no evidence that the only conceivable—or even the most likely—reaction to pain of the sort Lin described would be to writhe uncontrollably, nor did he cite any evidence that sterilizations cannot be performed with the necessary precision under the conditions Lin testified to. In particular, the IJ failed at all to assess what effect, if any, the partial anesthesia administered on Lin would have had on her reaction to, or the success of, the sterilization procedure. Stripped bare, the IJ's contention, without any support, is that sterilization procedures cannot be performed successfully if the patient is experiencing pain and is not fully immobilized. We need not delve into whether this contention is true; it is enough that it is what it is not permitted to be—*i.e.*, both beyond ordinary judicial competence and unsupported in the record. *See Zhou Yun Zhang*, 386 F.3d at 74 ("[O]ur review is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice."); *Cf.* Fed.R.Evid. 201(b) (describing a judicially noticed fact as one that "is either (1) generally known ... or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

The IJ called Lin's account of the sterilization procedure "the most critical issue here." The IJ's evaluation of this account was unduly speculative, and we cannot be confident that the agency would reach the same result on remand absent this error. For, as critical to the futility inquiry as the quantum *simpliciter* of non-erroneous evidence is the relative significance to the IJ of the IJ's erroneous findings. The more central an errant finding was to the IJ's adverse credibility determination, naturally, the less confident we can be that remand would be futile. In this respect, it is well to reiterate that had the IJ not—as he put it—relied on this finding as the "most critical" element of his credibility determination, our result would quite likely be very different. Similarly, and equally crucially, the BIA in summarily affirming did not modify the IJ's findings at all, and therefore must also be taken not to have objected to this erroneous finding, or at least, not to have found it to constitute reversible error. *See* 8 C.F.R. § 1003.1(e)(4)(ii) (stating that a summary affirmance by the BIA "does not necessarily imply approval of all of the reasoning of [the IJ's] decision, but does signify the Board's conclusion that any errors in the decision ... were harmless or nonmaterial").

Accordingly, we vacate the BIA's order denying Lin's withholding of removal claim under the INA and remand it to the agency for reconsideration in light of this opinion.

Conclusion

In the end, the remand in this case rests on very narrow grounds. Where the BIA summarily affirms an IJ opinion that, expressly and fundamentally, relies on an erroneous ground, it is hard to be confident that the same result would occur absent the error. That said, nothing we have said—indeed, can say—can conceal the ineluctable fact that these cases, simply put, are hard. They do not easily submit to catch-all formulae or general rules; each case is fact-specific, and so it is with this one. Reiterating the sage observation of a recent panel, "We know of no way to apply precise calipers to all [credibility] findings so that any particular finding would be viewed by any three of the 23 judges of this Court as either sustainable or not sustainable." *Ming Xia Chen v. BIA*, 435 F.3d 141, 145 (2d Cir.2006). The appropriate course, as always, is to do what judges do best—to decide one case at a time.

We GRANT the petition for review as it relates to Lin's claim for withholding of removal. We dismiss for want of jurisdiction Lin's challenge to the IJ's determination that she offered no credible evidence as to her date of entry. As to Lin's due process claim, the petition for review is DENIED. We VACATE the BIA's order of removal and REMAND the case to the agency for reconsideration of Lin's claim for withholding under the INA. Having completed our review, any stay of removal that the Court previously granted in this petition is vacated, and any pending motion for a stay of removal in this petition is denied as moot.