**GUANGHUA ZHOU, Petitioner,**

v.

**Alberto GONZALES, United States Attorney General, Respondent.**

No. 05–1193–ag.

United States Court of Appeals, Second Circuit.

Aug. 17, 2006.

Aleksander B. Milch, Christophe & Assoc., P.C., New York, NY, for Petitioner.

Lisette M. Reid, Assistant United States Attorney (R. Alexander Acosta, United States Attorney, Southern District of Florida, Anne R. Schultz, Chief, Appellate Division, Jonathan Colan, Assistant United States Attorney, on the brief), Miami, FL, for Respondent.

Present CHESTER J. STRAUB, ROSEMARY S. POOLER and ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

Upon due consideration and after oral argument, it is hereby ORDERED, ADJUDGED and DECREED that the petition for review of the March 8, 2005 Board of Immigration Appeals ("BIA") order is GRANTED, the BIA's order is VACATED, and the case is REMANDED for further proceedings consistent with this decision.

Guanghua Zhou, a native and citizen of the People's Republic of China, seeks review of a March 8, 2005 order of the BIA affirming the November 5, 2003 decision of Immigration Judge ("IJ") Noel A. Ferris denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Guanghua Zhou*, No. A95 163 499 (B.I.A. March 8, 2005) (per curiam), *aff'g* No. A95 163 499 (Immig. Ct. N.Y. City Nov. 5, 2003). We assume the parties' familiarity with the underlying facts and procedural history of this case.

Where, as here, the BIA summarily affirms the IJ's decision, we review the IJ's decision directly. *See Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005). We review the IJ's adverse credibility determination pursuant to the substantial evidence standard. *See Tambadou v. Gonzales*, 446 F.3d 298, 302 (2d Cir.2006); 8 U.S.C. § 1252(b)(4)(B). "We will uphold the determination if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Tambadou*, 446 F.3d at 302 (internal quotation marks omitted). We will vacate and remand when the IJ's determination "is based on an inaccurate perception of the record, omit[s] potentially significant facts," *id.*, fails to set forth "specific, cogent reasons," or is grounded in "speculation or conjecture," *Secaida–Rosales v. I.N.S.*, 331 F.3d 297, 307 (2d Cir.2003).

Many of the grounds on which the IJ based her adverse credibility determination, including those on which she placed particular emphasis, lack substantial evidentiary support. The IJ first noted that Zhou testified inconsistently as to whether he and his wife were sterilized. However, this purported inconsistency appeared to be the result of a translation error rather than an attempt to mislead the IJ. On direct, Zhou testified that the "Chinese government forced my wife to have IUD insertion, sterilization, abortion. Also, forced me to be sterilized." However, in the next breath he stated that although the government wished to sterilize them both, neither he nor his wife actually were sterilized—testimony to which he adhered throughout the hearing and which his written materials fully reflected. When this inconsistency was pointed out to him, he immediately denied having said that either he or his wife was sterilized. Further, translation issues arose frequently throughout the hearing, and the translator offered a nonsensical translation of Zhou's testimony on this exact point: "I said they forced me to be sterilized and had not been sterilized." The IJ recognized that the translator was having difficulty, dismissed the problem because Zhou had elected to speak in Mandarin instead of Foo Chow, and subsequently characterized the confusing translation as an example of Zhou's deceitfulness. Under these circumstances, the IJ's finding is based on an "inaccurate perception of the record" and thus is insufficient. *Tambadou*, 446 F.3d at 302. Further, the IJ placed considerable weight on her misapprehension: what she perceived as a lie, as she set forth in her decision, "flavored the entire hearing."

The IJ also set forth that Zhou's evasiveness "cast a flavor over the entire hearing." The IJ did not give specific examples of his evasiveness, and our review of the record yields little support for

the IJ's perception. *See Li Hua Lin v. U.S. D.O.J.*, 453 F.3d 99, 109 (2d Cir.2006) (noting that while we give particular deference to an IJ's assessment of demeanor, we can be "more confident in our review of observations about an applicant's demeanor where . . . they are supported by specific examples"). It is true that Zhou sometimes gave imprecise answers, but he was not unresponsive. For example, when asked when his wife became pregnant, Zhou replied "1999." The IJ asked when in 1999. Zhou replied that her abortion—which, it had been established, occurred in May—took place when she was about four or five months into her pregnancy. The IJ then asked when Zhou's wife told him she became pregnant. He answered "[a]pproximately in January or February." Since Zhou had not given that particular answer immediately, the IJ warned him, "if you don't want to answer the questions, understand I probably won't believe you're truthful." However, this illustrative exchange shows that Zhou was not evading questions; he gave responsive information, just not in the precise manner that the IJ desired. Even if Zhou did not offer crisp and efficient testimony, the record does not support the IJ's finding that he was evasive.

The IJ also found it implausible that Zhou and his wife would remain in their village for four months after his wife became pregnant even though they knew they had violated the family planning laws. Zhou explained that they did not leave immediately because he was working and his wife had not yet "begun to show." By the time she did, he explained, it was rainy season and they could not migrate. It is unclear why the IJ found this narrative implausible. In any event, we have rejected such a finding before. *See Zhi Wei Pang v. B.C.I.S.*, 448 F.3d 102, 110 (2d Cir.2006) (concluding that where petitioner testified his wife was "just slightly show-ing," petitioner's "failure to flee immediately can [not] be automatically considered suspect").

The IJ also found Zhou's testimony incredible and "strange" because he used the word "gestation" to describe his wife's pregnancy, saying, in the English translation from Zhou's Mandarin, that she was "about five months into gestation" when the abortion occurred. However, we perceive nothing strange about the use of the word "gestation," and we see no logical connection between that utterance and Zhou's credibility. This aspect of the IJ's adverse credibility determination lacks cogency, and thus is insufficient.

The IJ also based her determination on the implausibility of Zhou's assertion that, at the time the authorities took his wife for an abortion in 1999, Zhou knew she had a condition that prevented her from being sterilized. In reaching this conclusion, however, the IJ failed to consider a probative aspect of the record, namely, Zhou's testimony that he learned of his wife's condition when she sought medical care in 1998 due to complications from the insertion of an IUD. Accordingly, this component of her adverse credibility finding is insufficiently supported. *See Xiao Ji Chen v. U.S. D.O.J.*, 434 F.3d 144, 163 (2d Cir.2006) (emphasizing that IJ should "consider all the evidence in the record that has probative value" (internal quotation marks omitted)).

The IJ further based her determination on her mischaracterization of Zhou's testimony that, despite his wife's condition, they wanted another child, "especially [a] boy[ ] because they're more durable." As an initial matter, Zhou never testified that boys were preferable to girls because boys were more durable. Although Zhou noted that his own son was "durable," he actually testified that he and his wife would "prefer

to have a daughter." In any event, Zhou offered an apparently plausible explanation for his wife's decision to get pregnant again, notwithstanding her condition. He and his wife "really wanted to have [another] child. We took a risk." He added, "This actually is, it's my wife's decision and request, so we took such a risk." Apart from mischaracterizing Zhou's testimony, the IJ failed to offer any specific and cogent reason for dismissing his explanation. This aspect of the IJ's adverse credibility finding therefore lacks sufficient evidentiary support.

The IJ also found Zhou not to be credible because he testified that, even though he was hiding from the authorities, he sought treatment for an injury at the same hospital to which authorities had taken his wife for her abortion. The IJ asserted that Zhou's explanation for taking such a risk was that the hospital staff "wouldn't know one Chinese person from another." The IJ found this statement not only incredible, but racially inappropriate, setting forth that, "Certainly, had the Court uttered something like that, they would have been jumped all over for being insensitive."

Yet the IJ again mischaracterized Zhou's testimony. Zhou testified that he felt secure going to the hospital "[b]ecause so many Chinese people, it's not easy for them just encounter individual." The only fair reading of this statement is that the hospital was so crowded Zhou thought he would not be recognized. This aspect of the IJ's adverse credibility determination is based on an inaccurate perception of the record and thus cannot stand. In fact, many of the IJ's errors themselves seemed to reflect a lack of cultural sensitivity by treating what were obvious translation difficulties as evasiveness that "flavored the entire hearing," making unwarranted assumptions about the sophistication of the

words Zhou ought to use, and, most glaringly, baselessly accusing Zhou of cultural insensitivity.

In light of all these flawed findings—two of which colored the entire hearing in the IJ's eyes—as well as the absence of a viable alternative ground for the IJ's decision, we cannot confidently predict that the IJ would reach the same result on remand. *See generally Li Hua Lin,* 453 F.3d at 106–07. For the reasons set forth above, the petition for review of the BIA's March 8, 2005 order is GRANTED, the order is VACATED, and the case is REMANDED for further proceedings consistent with this decision. The pending motion for a stay of removal is DENIED as moot.