SUMMARY ORDER

Petitioner Qing Song Lin, a native and citizen of the People’s Republic of China, seeks review of a November 12, 2008 order of the BIA affirming the December 4, 2003 decision of Immigration Judge (“IJ”) Sandy K. Horn, denying his application for asylum and withholding of removal. In re Qing Song Lin, No. A095 856 070 (B.I.A. Nov. 12, 2008), aff'g No. A095 856 070 (Immig. Ct. N.Y. City Dec. 4, 2003). We assume the parties’ familiarity with the *453 underlying facts and procedural history in this case.[2]
When the BIA affirms the IJ’s decision and supplements it, this Court reviews the IJ’s decision as supplemented by the BIA. See Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir.2005). We review the agency’s factual findings under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); see Corovic v. Mukasey, 519 F.3d 90, 95 (2d Cir.2008).
The agency’s adverse credibility was based, in part, on flawed reasoning resulting from the IJ’s misunderstanding of the record. First, the IJ stated that Lin “testified that his wife[, Bi Chen,] had become pregnant after their wedding ceremony and that the school had found out about the pregnancy and aborted the pregnancy at the school clinic.” Although Lin did testify that Chen became pregnant in 1998, while they were both in school, he plainly testified that they did not get married until 2001. Second, the IJ found that paragraph 5 of Lin’s asylum statement, in which he stated that Chen’s parents sent her to live with her aunt in Changle City, gave the “distinct impression” that Lin and Chen were not married. It is not clear from the statement, however, whether Lin was referring to a time period prior to when he and Chen purportedly got married. Third, and similarly, the IJ found that Lin’s assertion in his asylum statement that Lin “was required to remain with his parents until ... he went to Changle and helped his uncle” “indicate[s] that [Lin and Chen] did not act as husband and wife.” Again, however, it is not clear from Lin’s statement whether Lin was referring to a time prior to the purported marriage. Further, Lin’s statement does not indicate that Lin “was required to remain with his parents” after Chen’s first pregnancy. Finally, the IJ largely discredited the corroborating evidence that Lin submitted, stating that “there was some concern” regarding the authenticity of the documents. However, the IJ neglected to state the basis for this concern. See Niang v. Mukasey, 511 F.3d 138, 147 (2d Cir.2007).
The IJ did correctly note that Lin did not mention the purported traditional marriage to Chen in his asylum statement, which is inconsistent with his testimony that he and Chen were married in 2001. However, given the other flaws in the reasoning supporting the agency’s adverse credibility determination, and how closely intertwined the majority of those flaws are with the inconsistency that the IJ accurately identified, we cannot be sure whether the agency would come to the same conclusion concerning Lin’s credibility in the absence of such errors. See Li Hua Lin v. U.S. Dep’t of Justice, 453 F.3d 99, *454 105-11 (2d Cir.2006). Accordingly, we remand the case to the agency for reconsideration of Lin’s claims.
For the foregoing reasons, the petition for review is GRANTED.

. The Court is troubled by some of the improper comments made by Lin's counsel, Albert Lefkowitz, during the proceedings before the IJ. For example, when Lefkowitz questioned Lin as to what the legal age for marriage was in China, Lin responded, “It's 20 and 22. 20 for the female and 22 for the male.” Transcript at 63. This meant that Chen was of legal age but Lin was one year too young. Lefkowitz followed up by asking, “Well, what was the rush to the alter. Why couldn’t you simply get engaged and wait a year like everybody else does. Then you wouldn’t have these problems. True?” Id. Later, when questioning Lin about how many times Chen had gotten pregnant, Lefkowitz said, "You look like a smart boy. You ever hear of a condom?” Id. at 65. And the last question Lefkowitz asked his client during the hearing was: "You see what bothers me about this case is that despite what happened in China, you could have waited one more year and you would not have had to flee China. Isn’t that true?” Id. at 69. This is not the first time that Lefkowitz’s inappropriate conduct has created cause for concern. See Tan Chen v. Holder, 319 Fed.Appx. 17, 18 n. 2 (2d Cir.2009). Lin, however, does not raise the adequacy of his counsel’s representation as an issue on appeal.