15-1832
*Chen v. Lynch*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand sixteen.

PRESENT:  JON O. NEWMAN,
          JOSÉ A. CABRANES,
          RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

---

CHEN CHEN, AKA TONGCHUN CHEN,

         *Petitioner,*               No. 15-1832

         v.

LORETTA E. LYNCH, UNITED STATES ATTORNEY GENERAL,

         *Respondent.*

---

**FOR PETITIONER:**             Gary J. Yerman, New York, New York.

**FOR RESPONDENT:**          Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Acting Assistant Director, Office of Immigration Litigation; D. Nicholas Harling, Trial Attorney, Office

of Immigration Litigation; United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Chen Chen ("Chen"), a native and citizen of the People's Republic of China, seeks review of a May 8, 2015, decision of the BIA, affirming a September 16, 2013, decision of an Immigration Judge ("IJ") denying Chen's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Chen Chen*, No. A201 026 751 (B.I.A. May 8, 2015), *aff'g* No. A201 026 751 (Immig. Ct. N.Y. City Sept. 16, 2013). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

In the circumstances presented here, we review both the IJ's and BIA's decisions. *See, e.g.*, *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005) ("Where, as here, the BIA agrees with the IJ's conclusion that a petitioner is not credible and, without rejecting any of the IJ's grounds for decision, emphasizes particular aspects of that decision, we will review both the BIA's and IJ's opinions—or more precisely, we review the IJ's decision including the portions not explicitly discussed by the BIA.").

Under the REAL ID Act of 2005, the agency may, in light of "the totality of the circumstances," base an adverse credibility determination on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements, "without regard to whether" they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 163–64 (2d Cir. 2008).

"We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Xiu Xia Lin*, 534 F.3d at 165–66 (quoting 8 U.S.C. § 1252(b)(4)(B)). "[D]emeanor is paradigmatically the sort of evidence that a fact-finder is best positioned to evaluate." *Li Zu Guan v. INS*, 453 F.3d 129, 140 (2d Cir. 2006). We therefore "give particular deference to credibility determinations that are based on the adjudicator's observation of the applicant's demeanor." *Jin Chen v. United States Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005).

Based on an independent review of the record, we conclude that substantial evidence supports the agency's adverse credibility determination due, in part, to Chen's inconsistent statements and his demeanor during testimony.

During the hearing, Chen testified inconsistently about his three so-called beatings. He testified that he had been detained by Chinese government officials for one week during which he

had been interrogated and beaten on three occasions. According to Chen, the police asked him to identify the pastor of his underground church—whose name Chen did not know—and then beat him with a baton. He explained that, during the first beating, one man struck him on the back with a police baton three times. When asked how the second beating differed from the first, he answered "the same." Yet he then stated that he was punched in the chest during the second beating, and, after further cross-examination, added that he was also kicked. When asked about the third beating, Chen said that it was the "same thing" and "[t]he same way as the first and second time." After the IJ reminded Chen that he had testified that the first and second beatings were different from each other, Chen added that, during the third beating, he was beaten with a baton on the chest and back.

Chen also testified inconsistently about the length of time that had elapsed between each of the beatings. When asked during cross-examination about the *duration* of the beatings, instead of answering the question, Chen testified about the time span *between* the beatings: two days between the first and second beatings and three or four days between the second and third beatings. When Chen was asked to clarify whether three or four days had passed between the second and third beatings, the record reflects that Chen took a long pause before responding that three days had passed between the first and second beatings. When Chen was asked why he had changed his answer as to the length of time between the first and second beatings, the record reflects that Chen took another long pause before stating that three days had passed between the first and second beatings and two days had passed between the second and third beatings. The record reflects that Chen took three more long pauses in response to subsequent questions and eventually stated that he was "[j]ust now" remembering what had happened. As we have previously observed, "[w]e can be still more confident in our review of observations about an applicant's demeanor where, as here, they are supported by specific examples of inconsistent testimony." *See Li Hua Lin v. United States Dep't of Justice*, 453 F.3d 99, 109 (2d Cir. 2006).

In addition to the inconsistencies in Chen's testimony and his demeanor during testimony, the IJ's credibility determination was properly based on Chen's omission from his asylum application of details regarding the timing of his beatings. *See Xiu Xia Lin*, 534 F.3d at 166. When asked why he omitted these details from his application, Chen answered that, "[a]t that time, [he] couldn't remember it." When Chen was asked how he was able to remember these details at the hearing, the record reflects that Chen took a long pause before stating that, "[r]ecently, [his] memory is not that good," and that, "[w]hen [he] wrote [the application], [he] was thinking and . . . writing at the same time." The agency was not required to credit this explanation. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005).

Based on the foregoing, we conclude that substantial evidence supports the agency's adverse credibility determination, and that the agency did not err in denying Chen's application for asylum and withholding of removal. *See Xiu Xia Lin*, 534 F.3d at 167. Because Chen's claims for asylum,

withholding of removal, and CAT relief all relied on the same factual predicate, the adverse credibility determination is dispositive. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

## CONCLUSION

For the foregoing reasons, the petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk