Lin v. Garland

BIA
Baumgarten, IJ
A215 668 645

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of September, two thousand twenty-four.

PRESENT:
> GUIDO CALABRESI,
> DENNY CHIN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

YANMING LIN,
> *Petitioner,*

v.                                                                  **22-6419**
                                                                    **NAC**

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          John S. Yong, Law Office of John S. Yong, PC, New York, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Shelley R. Goad, Assistant Director, Office of Immigration Litigation; Carmel A. Morgan, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Yanming Lin, a native and citizen of the People's Republic of China, seeks review of an August 8, 2022, decision of the BIA affirming an April 19, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Yanming Lin*, No. A 215 668 645 (B.I.A. Aug. 8, 2022), *aff'g* No. A 215 668 645 (Immigr. Ct. Batavia Apr. 19, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, i.e., without the grounds for the adverse credibility determination that the BIA did not reach. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's factual findings, including adverse credibility determinations, for substantial evidence, and we review questions of law and the application of law

2

to fact *de novo*.   *See Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018).   "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."   8 U.S.C. § 1252(b)(4)(B).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . , the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor."   *Id.* § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."   *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.   Considering the record as a whole, substantial evidence supports the agency's determination that Lin was not credible.

First, the agency reasonably relied on an inconsistency regarding the date of

3

Lin's first arrest. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Lin testified that he attended church only on Sundays, and that he was arrested on April 9, 2018, shortly before the end of a church service. The April 9 date was repeated in his application and on an arrest warrant and "release certificate" purportedly issued by the police. When the Department of Homeland Security noted, accurately, that April 9, 2018 was a Monday, Lin replied only that he remembered it was a Sunday. Lin argues that the agency erred in relying on this inconsistency without giving him an opportunity to clarify. But no further inquiry was required after he was directly asked about the inconsistency. *See Likai Gao v. Barr*, 968 F.3d 137, 146 (2d Cir. 2020) (holding that the agency properly relied on a contradiction without soliciting an explanation because the contradiction was "clear" on the face of the petitioner's testimony and the "burden of explanation [thus] fell squarely on [the petitioner]").

Lin also argues that he was reasonably confused about the dates after his lengthy detention. As outlined above, his testimony that he attended church only on Sundays foreclosed the possibility that he was arrested at services on a Monday, and his supporting documents would undermine any argument that he was arrested on Sunday, April 8. The inconsistency here was especially significant because it undermined his testimony about his church attendance and

4

his allegations of past persecution on account of his religion.

Second, the agency reasonably concluded that Lin's testimony about obtaining a passport "through normal channels" was implausible. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). While the agency may not engage in "bald" speculation, it may rely on implausibility findings based on an "inference . . . made available to the factfinder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience." *Siewe v. Gonzales*, 480 F.3d 160, 168–69 (2d Cir. 2007). Lin testified that he obtained his passport through "normal channels," explaining that this meant "[t]hrough the police office." Certified Administrative Record at 176. When asked "why" his passport was issued eight days after his alleged first arrest and while he was still detained by the police, *see id.* at 177, Lin adjusted his testimony to assert that his parents had paid someone to help him get the passport through normal channels. He further appeared to testify that the application was filed with "the police office" while he was detained, but he did not explain how his family obtained his signature and photograph, which appear on the passport. *See id.* The agency reasonably inferred that it was unlikely that "the police office" would issue a passport to a person in their custody. Lin argues that he should have been given an additional opportunity to explain what he

5

meant by "normal channels," and that he did not know details because his parents arranged for the passport. But he was asked directly about this issue, s*ee Likai Gao*, 968 F.3d at 146, and he does not explain how he could have resolved the implausibility if given further opportunity to do so.[1]

Third, the agency reasonably relied on Lin's inconsistent and confusing testimony about the fate of his passport. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Lin provided a partial copy of the passport, which he claimed was made in China prior to his travel, and testified that he gave the original to a smuggler in Mexico, who was supposed to send it on to a person who would meet him in Los Angeles. But he subsequently testified that the smuggler mailed the passport to an attorney Lin hired after he was arrested at the border and that the passport was confiscated by U.S. authorities before reaching Lin's attorney. The timing does not work: if the

---

[1] The agency also found it implausible that the police, after allegedly giving him a passport and Lin using that passport to exit the country, would look for Lin in China following his departure. Lin argues that there was no basis for the agency to infer that the local police would be aware of his travel out of China. Assuming *arguendo* that Lin is correct on this score, the remaining findings still provide substantial evidence for the adverse credibility determination. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 434 F.3d 144, 160–61 (2d Cir. 2006) (declining to remand where substantial evidence supports the adverse credibility determination despite "some deficiencies in the IJ's factual analysis").

person who was going to meet him in the United States was supposed to already have his passport, the smuggler would not have had it to send to his attorney.[2] To the extent that Lin argues that he could have provided more information to clarify the timeline, he does not explain what that information was, or why he did not provide it when the issue was raised. *See Likai Gao*, 968 F.3d at 146.

Fourth, we defer to the agency's finding that Lin's demeanor changed on cross-examination, particularly given the inconsistencies that arose on cross-examination. *See Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006) (explaining that an IJ is "in the best position to evaluate whether apparent problems in the . . . testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question" and finding deference due particularly where "observations about . . . demeanor . . . are supported by specific examples of inconsistent testimony" (citation omitted)). Contrary to Lin's argument that the agency inadequately explained this finding, the IJ noted that Lin appeared flustered or surprised when issues were raised on

---

[2] Lin argues that the questions posed were confusing, but an IJ "who assesses testimony together with witness demeanor is in the best position to discern . . . whether a question that may appear poorly worded on a printed page was, in fact, confusing or well understood by those who heard it." *Majidi v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005) (citation omitted).

cross-examination.

Finally, the agency reasonably relied on Lin's failure to corroborate his claim with statements from the other church members he was arrested with, evidence of his injuries, or evidence of a continuing practice of Christianity. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). As the BIA found, Lin failed to present meaningful arguments challenging the IJ's finding before the agency, and he does not challenge it here. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("'We consider abandoned any claims not adequately presented in an appellant's brief,' and an appellant's failure to make 'legal or factual arguments' constitutes abandonment." (citation omitted)).

In sum, given the inconsistencies, implausible testimony, demeanor finding, and lack of corroboration, substantial evidence supports the adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 167–68; *Siewe*, 480 F.3d at 168–69; *Li Hua Lin*, 453 F.3d at 109; *Biao Yang*, 496 F.3d at 273. The adverse credibility determination is dispositive of asylum, withholding of removal, and CAT relief

8

because the three forms of relief relied on the same facts.  *See Hong Fei Gao*, 891

F.3d at 76.

For the foregoing reasons, the petition for review is DENIED.   All pending

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court