# United States Court of Appeals
## For the First Circuit

No. 06-2123

IN RE: STEPHEN H. CHEW, DEBTOR

MARCIA McGARRY, CYNTHIA WYROCKI, EDWARD CHEW,
CAROL COLBURN,

Appellants,

v.

STEPHEN H. CHEW,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Michael B. Feinman, for appellants.
Jon H. Kurland, for appellee.

July 30, 2007

**LIPEZ**, **Circuit Judge**.   This case arises from a family dispute about an inheritance.   In the course of a bankruptcy proceeding initiated by Stephen Chew, the appellants – Chew's siblings – opposed his claim to a homestead exemption for a residence that was partially financed with funds that the siblings' mother intended all five of her children to share after her death. The bankruptcy court ruled in favor of Chew, denying the siblings' objection to the claimed exemption.   On intermediate appeal, the district court ruled that the siblings' opposition to the exemption was barred by claim preclusion.   We agree, and therefore affirm without reaching appellants' other contentions.

## I.

### A.  Factual and Early Procedural Background

In 1984, Stephen Chew and his mother, Eleanor, orally agreed that Eleanor would provide Chew and his wife, Christine, approximately $140,000 toward the construction of a residence on the understanding that Eleanor would live in an attached apartment and retain an interest in the property that would be distributed among all of her children upon its eventual disposition.   Eleanor lived in the apartment until her death in 1998.   The Chews sold the house for $625,000 in 2001; however, instead of distributing Eleanor's portion of the proceeds in accordance with the agreement, they used the entire amount to purchase another property.   This

appeal concerns the efforts of Chew's siblings[1] – to whom we shall refer collectively as "the creditors" – to recoup their proportionate share of the sale proceeds.

Three months after the sale, in November 2001, the creditors filed suit in Massachusetts Superior Court. Although the parties' submissions before the state court are not in the record before us and the state court's opinion is not entirely clear on some points, it appears that the creditors brought claims on Eleanor's behalf and in their own capacities as third party beneficiaries to the agreement between Eleanor and Chew alleging a variety of wrongs done to Eleanor. These included breach of contract, misrepresentation and deceit, unjust enrichment, conversion and breach of fiduciary duty. They sought a one-third interest in the property, based on the terms of the oral agreement; the state court calculated the value of this interest as "approximately $206,250."

Ruling on the Chews' motion to dismiss under Massachusetts Rule of Civil Procedure 12(b)(6), the state court concluded that Eleanor's "dissatisfied children" were not permitted to bring a claim for breach of contract on her behalf because, while her contractual rights "endure[] beyond her life," they must be enforced by her estate. However, it found that "where the

---

[1] The four, all appellants, are Marcia McGarry, Cynthia Wyrocki, Edward Chew and Carol Colburn.

-3-

children are suing in their own capacities as third party beneficiaries," they had standing to continue with the contract claim on that basis. It is not clear from the court's decision whether Eleanor's children brought the tort-based claims only on her behalf or also in their capacity as third party beneficiaries. In any event, the court dismissed the remaining claims, ruling that the misrepresentation and conversion claims "do not survive Eleanor's death." It also dismissed the claims for unjust enrichment and breach of fiduciary duty for lack of standing, finding that the siblings could neither bring these claims on Eleanor's behalf nor under a third party beneficiary theory. After further proceedings, the court issued a judgment against Chew on the contract claim and dismissed the claims against Christine Chew.

On appeal, the Massachusetts Appeals Court upheld the contract claim and reversed the dismissal of the claims against Christine Chew. Based on this judgment, the creditors obtained a lien against the Chews' home, thus creating a legally enforceable claim against the Chews' equity in the house.

Before the Superior Court's ruling, in October 2003, Christine Chew filed a declaration of homestead with the Massachusetts Registry of Deeds. Under Massachusetts law, an estate of homestead valued at up to $500,000 "shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies," Mass. Gen.

Laws ch. 188, § 1.  In October 2005 – after the Superior Court's ruling, but before the Massachusetts Appeals Court's decision – Stephen Chew filed for Chapter 7 bankruptcy protection.  Based on his wife's earlier declaration, Chew listed his homestead on schedule "C" of his bankruptcy petition, which lists "property claimed as exempt."[2]  Under 11 U.S.C. § 522(b), a debtor may exempt from property of the bankruptcy estate a homestead recognized as exempt under State law.[3]  Thus, by claiming a homestead exemption under Massachusetts law, Chew sought to remove the property from the bankruptcy estate and thereby protect it from distribution to his creditors in the bankruptcy process.

In January 2006, the creditors filed an objection in bankruptcy court to Chew's homestead exemption, arguing that, while Chew held legal title to his home, the portion of the equity financed by their mother should be held in trust for them as its

---

[2] The Massachusetts homestead statute specifies that "only one owner may acquire an estate of homestead in any such home for the benefit of his family," Mass. Gen. Laws ch. 188, § 1.  It further defines "family" to include "a husband and wife," id.

[3] Section 522(b) of the Bankruptcy Code allows states to limit debtors to either federal or state exemptions in bankruptcy.  In states like Massachusetts that have not imposed such a limitation, debtors may choose between the federal exemptions, listed in § 522(d), and state exemptions.  See In re Weinstein, 164 F.3d 677, 679 & n.1 (1st Cir. 1999).  The federal homestead exemption allows the debtor to claim an exemption up to $20,200 for a homestead. 11 U.S.C. § 522(d)(i).  Not surprisingly, Chew chose the much more generous state homestead exemption.

true equitable owners.  They relied on Massachusetts law allowing

a "constructive trust" as an equitable remedy

> in the absence of any intention of the parties
> to create a trust, in order to avoid the
> unjust enrichment of one party at the expense
> of the other where the legal title to the
> property was obtained by fraud or in violation
> of a fiduciary relation . . . .

Mass. Wholesalers of Malt Beverages, Inc. v. Att'y Gen., 567 N.E.2d

183, 186 (Mass. 1991) (quoting Barry v. Covich, 124 N.E.2d 921, 924

(Mass. 1955) (internal quotation marks omitted)).  Asserting that

property held in trust is not eligible for the homestead exemption,

see Ass't Recorder of the N. Registry Dist. v. Spinelli, 651 N.E.2d

411, 413 (Mass. App. Ct. 1995) ("[T]he homestead statute does not

provide for the application of the statute to property held in

trust."), the creditors urged the bankruptcy court to deny the

exemption.[4]

---

[4] We note that Spinelli was recently criticized.  See In re
Szwyd, 346 B.R. 290, 292-93 (Bankr. D. Mass. 2006).  In that case,
the bankruptcy court noted that Spinelli had interpreted the
language of the Massachusetts Homestead Statute strictly – finding
"that because there is no explicit statutory reference to trusts in
the statute, the beneficial owners of trusts do not enjoy the
exemption in a residence owned by the trust." Id. at 291.  It
contrasted this approach with a subsequent decision in Dwyer v.
Cempellin, 673 N.E.2d 863, 866 (Mass. 1996), which interpreted the
homestead statute broadly, based on its purpose of protecting the
family home.  The bankruptcy court in In re Szwyd opted for the
latter interpretation of the homestead statute, stating in dicta
that "the Spinelli court was wrong in its approach."  346 B.R. at
292.

If the creditors had been successful in establishing their right to a constructive trust on the property,[5] Chew would not have been able to exempt their equity in the home from the bankruptcy estate, and the creditors, subject to the automatic stay provisions of the bankruptcy code, 11 U.S.C. § 362, could seek to enforce their lien against the Chews' home in the state courts. However, if Chew succeeded in claiming the exemption, Chew could then avoid the creditors' judicial lien in bankruptcy under 11 U.S.C. § 522(f)(1)(A), which provides that a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption . . . if such lien is a judicial lien." Thus, § 522(f) "permits a debtor to wipe out the interest that a creditor has in particular property if the debtor's interest in that property would be exempt but for the existence of the creditor's lien or interest." 4-522 Collier on Bankruptcy P 522.11[1](15th ed. rev . 2006). In short, the prize in this

_____

[5] Although we refer to a "constructive trust on the property," the constructive trust encumbers the property only to the extent of the funds traceable from the alleged fraud. See Boston Safe Deposit & Trust Co. v. Seifert, 1997 Mass. Super. LEXIS 566, *23 (Mass. Super. Jan. 29, 1997) ("When trust property has been mingled with the trustee's personal property, a constructive trust may be enforced on the mingled property 'in such proportion as the trust property so mingled bears to the whole of the mingled property.'" (quoting Restatement (Second) of Trusts § 202, comment h (1959))); see also Chiu v. Wong, 16 F.3d 306, 310 (8th Cir. 1994) (imposing a constructive trust where a debtor commingled wrongfully converted money with other funds to purchase a homestead, and explaining "[o]nly to the extent that [the debtor] can differentiate her funds . . . from those wrongfully converted and commingled is the house free from the constructive trust").

dispute is the judicial lien on the Chews' home – whether it will survive as security for the indebtedness incurred by Chew as a result of the state court judgment against him, or whether it will be avoided by the bankruptcy court.

## B. Later Procedural Background

In a non-evidentiary hearing on the creditors' opposition to the homestead exemption, the bankruptcy court probed the trust claim, asking whether they had "already ha[d] the opportunity in the state court litigation to argue that the debtor held funds in a fiduciary capacity," suggesting that claim preclusion might bar such an argument here. Without clearly explaining the role that preclusion principles played in its decision, the bankruptcy court ruled against the creditors from the bench:

> With respect to the request for exemptions, however, I think that the debtor has the better argument here. I'm familiar with the cases that you have cited in support of your contention, but I think the Homestead Exemption under Chapter 188 tends to be, but for its stated exceptions, inviolate; and I think the status of title which I must take as is, as of the date of the filing of the petition, indicates that these spouses indeed have legal title, nothing having been done to disturb that legal title. There has been no contention that the Declaration of Homestead was itself defective in any way, and accordingly, I'm going to deny the objection to the exemption . . . .

The creditors appealed the bankruptcy court's decision to the district court, arguing in relevant part that the bankruptcy court committed reversible error by: (1) holding a non-evidentiary

hearing rather than an evidentiary hearing; (2) failing to set forth particularized findings of fact and rulings of law, as required by Federal Rule of Civil Procedure 52(a);[6] and (3) failing to find a constructive trust on the property, and, consequently, in denying the creditors' opposition to the exemption.[7]

The district court rejected the creditors' arguments, ruling that, where the underlying facts are not in dispute, it is not error for a judge to conduct a non-evidentiary hearing. It also held that the creditors were barred from raising this issue on appeal because they failed to request an evidentiary hearing before the bankruptcy court.

While it agreed that Rule 52 applied to the bankruptcy proceeding and that the bankruptcy court "should have provided particularized findings of fact and rulings of law," the district

_____

[6] The rule provides, in pertinent part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ." Fed. R. Civ. P. 52(a). The creditors argue, and the district court agreed, that Rule 52(a) applies because Rule 7052 of the Federal Rules of Bankruptcy Procedure states that Rule 52 applies in adversary proceedings within the bankruptcy process. "A proceeding to determine the validity, priority, or extent of a lien or other interest in property" is listed as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(2).

[7] They also argued that the bankruptcy court erred in relying on the Massachusetts Homestead Act in its analysis rather than on § 522 of the Bankruptcy Code, which they claim preempts it. The district court rejected that argument, finding that, to the limited extent that the Bankruptcy Code preempts the Massachusetts Homestead Act, it hurts the creditors' case. The creditors do not renew this argument before this court.

court ultimately determined that "the court's failure to provide such findings in this case is not reversible error" because the undisputed facts of the case demonstrated that the bankruptcy court's ruling should be affirmed.

Finally, in ruling on the creditors' constructive trust argument, the district court determined that their claim was barred by principles of claim preclusion "[s]ince appellants pursued a breach of contract theory, and not a constructive trust theory in the state court." Nevertheless, the district court went on to conclude – without an evidentiary hearing – that the creditors could not establish the necessary prerequisites for a constructive trust under Massachusetts law: either that Chew had engaged in "sufficient wrongdoing . . . in acquiring the property" or that a fiduciary relationship existed between Chew and the creditors.[8]

On appeal to this court, the creditors raise three issues. First, they argue that claim preclusion does not bar their constructive trust claim because the Supreme Court's decision in Brown v. Felsen, 442 U.S. 127 (1979), precludes the application of claim preclusion in federal bankruptcy proceedings.[9] Second, they

---

[8] In addition, to establish a constructive trust, the creditors would have to be able to trace the wrongfully held property to the fraud or breach of fiduciary duty. In re Linsey, 296 B.R. 582, 586 (Bankr. D. Mass. 2003). There is no dispute about the traceability of the proceeds from the sale of the Chews' original home to their use in the purchase of the new home.

[9] Appellants also contend that Chew waived the affirmative defense of claim preclusion. That argument is made so

contend that the bankruptcy court and the district court committed clear error in rejecting their constructive trust claim because they ignored relevant law and did not afford the creditors an opportunity to present evidence.  Finally, they argue that the bankruptcy court and the district court committed reversible error by not setting forth sufficient findings of fact and rulings of law under Rule 52(a).

## II.

Under 28 U.S.C. § 158, Congress granted district courts (and bankruptcy appellate panels) intermediate review of bankruptcy proceedings; further review is available in the courts of appeal. In considering a bankruptcy case that has been appealed to the district court, we review the bankruptcy court's findings of fact for clear error and its rulings of law de novo, affording no special deference to the district court's decision. In re Healthco Int'l, 132 F.3d 104, 107 (1st Cir. 1997).

## A.  Claim Preclusion

We begin – and end – our analysis by considering whether claim preclusion bars the creditors' constructive trust argument before the bankruptcy court.  Under Massachusetts law,[10] claim

_____

perfunctorily that we could easily deem it waived.  See Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 18 (1st Cir. 2004).  However, having evaluated the claim, we reject it.

[10] In evaluating the claim preclusive effect of a prior state proceeding, federal courts are required to give full faith and credit to state judicial proceedings, pursuant to 28 U.S.C. § 1738.

preclusion "prevents relitigation of all matters that were or could have been adjudicated in the [prior state] action," Blanchette v. School Comm., 692 N.E.2d 21, 25 n.3 (Mass. 1998). Claim preclusion is applicable where, as here, the prior and current actions share the same parties and the same cause of action and where the prior final judgment was "on the merits." Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005).

The creditors' principal argument is that claim preclusion does not apply to their claim because the Supreme Court has ruled that state court determinations do not have their ordinary preclusive effect in the bankruptcy court. They rely for this proposition on Brown v. Felsen, 442 U.S. at 133-34. Brown does not establish so broad a proposition. In that case, a creditor had alleged in state court pre-bankruptcy proceedings that the contested debt arose through debtor's fraud, deceit and malicious conversion. The suit was settled by a stipulated judgment. The Supreme Court determined that the debtor could not use claim preclusion to prevent the creditor from contesting the dischargeability of the debt in the subsequent bankruptcy proceedings. See id. (finding that, where the creditor "is attempting to meet . . . the new defense of bankruptcy which the

In Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984), the Supreme Court interpreted this principle to require federal courts to give state court judgments the same preclusive effect they would receive in that state. Accordingly, Massachusetts law governs the claim preclusive effect of the prior state court proceedings.

-12-

[debtor] has interposed between [the creditor] and the sum determined to be due him. . . . [The debtor] has upset the repose that would justify treating the prior state-court proceeding as final").

However, Brown is readily distinguishable from the instant case. In Brown, the debtor invoked claim preclusion to bar creditors' arguments against dischargeability – that is, the cancellation of a debtor's obligation in the final stage of a bankruptcy proceeding – rather than in opposition to a state homestead exemption, which is considered in the initial determination of which assets comprise the bankruptcy estate. These two phases of the bankruptcy process are distinguished by more than mere sequencing. The final dischargeability analysis is explicitly controlled by federal law. See 11 U.S.C. § 523(c)(1); 4-523 Collier on Bankruptcy P 523.08[7] ("The effect of section 523(c)(1) is to give the bankruptcy court exclusive jurisdiction over actions to determine the dischargeability of a debt . . . ."). In declining to confine the bankruptcy court's dischargeability analysis to the judgment and record in prior state court proceedings, the Supreme Court in Brown emphasized that Congress amended the Bankruptcy Code in 1970 to eliminate state court involvement in dischargeability questions and instead committed those issues to the federal bankruptcy courts. Brown, 442 U.S. at 135-36. These same concerns are not implicated in this case, which

involves a state law objection (constructive trust) to a state law exemption.

As a result of the particularity with which Congress has spoken on the exclusive jurisdiction of federal courts to adjudicate dischargeability, Brown is generally recognized as a "narrow" "exception to the general rule that claim preclusion does apply to bankruptcy proceedings," 18 J.W. Moore et al., Moore's Federal Practice § 131.23[5][d] (3d ed. rev. 2007). Accordingly, several circuits have recognized that Brown applies to the federal dischargeability issue, but not to issues of definition of property in the estate, in which Congress has given the states a key role. See, e.g., In re Comer, 723 F.2d 737, 740 (9th Cir. 1984) (applying claim preclusion to state court determination of the amount of an obligation where this determination would have no effect on the bankruptcy court's exclusive determination of the debt's dischargeability); Goss v. Goss, 722 F.2d 599, 603 (10th Cir. 1983) (finding that Brown did not prohibit giving preclusive effect to a state court determination that a particular obligation was in the nature of alimony or support, where Congress had granted concurrent jurisdiction to state courts to decide the question); In re Covington Grain Co., 638 F.2d 1357, 1360-61 (5th Cir. Mar. 1981) (accepting a state court's finding that an agency relationship existed outside the context of dischargeability on the basis that, in this context, "there is no overriding federal policy preventing

-14-

the bankruptcy court from accepting the findings of the state court").

Relatedly, the Court noted in Brown its policy concerns that applying claim preclusion under the circumstances of Brown would create perverse incentives for creditors to: (1) raise dischargeability defenses in anticipation of a bankruptcy filing "when they are not directly in issue and neither party has a full incentive to litigate them," 442 U.S. at 134; and (2) raise those defenses before a state court, which has no authority to determine dischargeability, id. at 135-36. These concerns are not present here. Applying claim preclusion on the facts of this case would encourage creditors to raise constructive trust claims in the earlier state proceedings involving disputes over promises and property when the issues are ripe and where - because they relate to causes of action created by state law - state courts would be in the best position to adjudicate them.

Finally, the creditors argue that because claim preclusion is based on considerations of fairness and efficient judicial administration, it should not be applied rigidly where such interests would not be served. See, e.g., Int'l Harvester Co. v. Occupational Safety & Health Review Comm'n, 628 F.2d 982, 986 (7th Cir. 1980) ("[E]ven where the technical requirements of res judicata have been established, a court may nonetheless refuse to apply the doctrine."). The creditors contend that the interests of

fairness and the finality of judgments are not served by allowing Chew to use bankruptcy protection to impede their ability to collect on the state court judgment through enforcement of their judicial lien. However, we find nothing unfair in requiring these creditors to be held to the litigation choices they made before the state court. The creditors, having brought suit in state court, had the opportunity to present explicitly to the state court their arguments that they were entitled to a constructive trust, or that the debtor had breached a fiduciary duty to them.

## B. Other Issues

The creditors also contend that the bankruptcy court (and the district court) erred in finding that they could establish no set of facts upon which their request for a constructive trust on the Chews' property could be predicated, particularly since they were not granted an evidentiary hearing. In addition, the creditors claim that they are entitled to new proceedings before the bankruptcy court because both the bankruptcy court and the district court failed to sufficiently set forth findings of fact and rulings of law under Rule 52(a). While we are troubled by the district court's decision to reach the merits of the creditors' constructive trust claim without an evidentiary hearing, we need not address either of these final two arguments. Any error on these grounds is harmless because of our determination that principles of claim preclusion bar consideration of the creditors'

constructive trust claim.  We therefore <u>affirm</u> the district court's decision, which affirmed the bankruptcy court's order denying the creditors' objection to Chew's homestead exemption.

**<u>So ordered.</u>**