Liang v. Sessions

BIA
Van Wyke, IJ
A093 343 091

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of August, two thousand eighteen.

PRESENT: BARRINGTON D. PARKER,
         REENA RAGGI,
         CHRISTOPHER F. DRONEY,
              *Circuit Judges.*

_____

WENCHAO LIANG,
         *Petitioner,*

         v.                                  No. 16-3041
                                             NAC
JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
         *Respondent.*

_____

FOR PETITIONER:        Thomas V. Massucci, Esq., New
                       York, New York.

FOR RESPONDENT:        Chad A. Readler, Acting Assistant
                       Attorney General; Margaret Kuehne
                       Taylor, Senior Litigation Counsel;
                       Patricia E. Bruckner, Trial
                       Attorney, Office of Immigration
                       Litigation, United States
                       Department of Justice, Washington,
                       D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Wenchao Liang, a native and citizen of the People's Republic of China, seeks review of the BIA's affirmance of an Immigration Judge's ("IJ's") denial of Liang's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Wenchao Liang,* No. A 093 343 091 (B.I.A. Aug. 11, 2016), *aff'g* No. A 093 343 091 (Immig. Ct. N.Y. City Mar. 4, 2015). Under the circumstances of this case, we review both the BIA's and IJ's decisions, *see Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005), applying well established standards of review, *see* 8 U.S.C. § 1252(b)(4); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008). In so doing, we assume the parties' familiarity with the underlying facts and procedural history of this case, which we reference only as necessary to explain our decision to deny the petition.

For asylum applicants such as Liang, the agency may, "[c]onsidering the totality of the circumstances," base a credibility finding on the applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and

2

inconsistencies in his statements and other record evidence "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see Xiu Xia Lin v. Mukasey*, 534 F.3d at 163-64. "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d at 167.

Here, the agency reasonably relied on discrepancies in the record in finding that Liang was not credible as to his claims of past persecution. Specifically, there was a discrepancy between Liang's testimony and his written statements related to the activities of the Shanghai Union for Self-Salvation of Families of Religious Persecution Victims ("Shanghai Union"), which Liang helped organize to press the government to release individuals detained on religious grounds. Although Liang's written statements described an active organization that sought to obtain justice for incarcerated family members, recruited members, demanded the release of prisoners, and raised money, his testimony revealed a much less developed organization that had existed for only 17 days, had taken little action, and

3

had not accomplished its goals. The agency permissibly relied on this discrepancy in concluding that Liang's written statements were misleading in their descriptions of Shanghai Union as an active organization. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d at 167 ("[A]n IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible." (emphasis in original) (internal quotation marks omitted)).

The agency also reasonably found it implausible that Liang was arrested for belonging to a nascent and all-but unknown organization whose members had not undertaken protests or any public activities to further the group's goals. *See* 8 U.S.C. § 1158(b)(1)(b)(iii) (the "inherent plausibility of the applicant's . . . account" is a ground for an adverse credibility determination); *Wensheng Yan v. Mukasey*, 509 F.3d 63, 66-67 (2d Cir. 2007) (same). Liang testified that someone reported the Shanghai Union's activities to the authorities, and that he was subsequently arrested, detained, interrogated, beaten, and forced to guarantee that he would not engage in political activities. The IJ was not compelled to credit this testimony in light of

4

Liang's never having publicly opposed the government. *See Siewe v. Gonzales*, 480 F.3d 160, 168-69 (2d Cir. 2007) (reasoning that although "bald" speculation is an impermissible basis for an adverse credibility finding, "[t]he speculation that inheres in inference is not 'bald' if the inference is made available to the factfinder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience"); *Ming Xia Chen v. BIA*, 435 F.3d 141, 145 (2d Cir. 2006) (holding that implausibility finding will be overturned only if "we are left with the definite and firm conviction that a mistake has been committed" (internal quotation marks omitted)).

Moreover, the agency reasonably found implausible Liang's testimony that he did not learn details about his father's conversion to Christianity or his religious practices, given that Liang's father was purportedly twice arrested for his religious convictions and those arrests and ensuing detentions were the events that allegedly galvanized Liang's involvement in an anti-government organization. *See Siewe v. Gonzales*, 480 F.3d at 168-69.

In addition, the IJ's findings regarding demeanor and corroboration bolster the agency's adverse credibility determination. We generally give "particular deference" to

5

adverse credibility determinations "that are based on the adjudicator's observation of the applicant's demeanor." *Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 109 (2d Cir. 2006) (internal quotation marks omitted). The record supports the IJ's conclusion that Liang's answers to questions about his father's arrests were hesitant and nonresponsive, that Liang answered several questions with questions of his own, and that the government attorney had to repeat questions to elicit complete answers. *See id.* ("We can be still more confident in our review of observations about an applicant's demeanor where, as here, they are supported by specific examples of inconsistent testimony.").

The agency also reasonably relied on the lack of evidence corroborating Liang's involvement in the Shanghai Union or his father's arrests. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). The IJ reasonably gave diminished weight to documents and letters from China because the drafters were unavailable for cross-examination and the documents were unauthenticated by anything other than Liang's

6

own testimony. *See Shunfu Li v. Mukasey*, 529 F.3d 141, 149 (2d Cir. 2008) (affording IJs "considerable flexibility in determining the authenticity of . . . documents from the totality of the evidence and in using documents found to be authentic in making an overall assessment of the credibility of a petitioner's testimony and, ultimately, of h[is] persecution claim"); *Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 214-15 & n.5 (B.I.A. 2010) (according limited weight to unauthenticated documents and to letters from witnesses who are not subject to cross-examination), *abrogated on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012).

In sum, (1) discrepancies regarding the degree to which Shanghai Union was an active organization at the time of Liang's arrest; (2) the implausibility of Liang's professed arrest and purported ignorance of his father's practice of Christianity; (3) the nonresponsiveness of Liang's testimony; and (4) the absence of reliable corroborating evidence, provide substantial evidence to support the agency's adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d at 167. Moreover, the adverse credibility determination is dispositive of Liang's claims for asylum, withholding of

removal, and CAT relief, because all rest on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court