09-3472-ag; 09-3694-ag
Jin v. Holder; Song v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued in Tandem:July 13, 2010 Decided: September 16, 2010)

Docket Nos. 09-3472-ag, 09-3694-ag

- - - - - - - - - - - - - - - - - - - - - -x

JIN JIN LONG,

　　　　Petitioner,

　　　　- v.-　　　　　　　　　　　　　　No. 09-3472-ag

ERIC H. HOLDER JR., UNITED STATES ATTORNEY
GENERAL,

　　　　　　　Respondent.[*]

- - - - - - - - - - - - - - - - - - - - - -x

RI QUAN SONG,

　　　　　　Petitioner,

　　　　- v.-　　　　　　　　　　　　　　No. 09-3694-ag

ERIC H. HOLDER JR., UNITED STATES ATTORNEY
GENERAL,

---

[*] The Clerk of the Court is directed to amend the
official caption to conform to the listing of parties above.

Respondent.\*\*

- - - - - - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, Chief Judge, WESLEY and CHIN, Circuit Judges.

Tandem petitions for review of removal orders, filed by Chinese citizens who claim they suffered persecution in China on account of assistance they gave refugees from North Korea. Ri Quan Song's petition is **DENIED**. Jin Jin Long's petition is **GRANTED**; the order of removal is **VACATED**, and his case **REMANDED** to the Board of Immigration Appeals for further proceedings consistent with this opinion.

JIE HAN, New York, NY, for Petitioner Jin Jin Long.

JOHN Z. ZHANG, New York, NY, for Petitioner Ri Quan Song.

SUSAN BENNETT GREEN, Trial Attorney, Civil Division (Tony West, Assistant Attorney General, Civil Division, Carl H. McIntyre, Assistant Director, Susan Houser, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division), United States Department of Justice, Washington, DC, for Respondent Eric H. Holder Jr. in Jin v. Holder, 09-3472-ag.

\*\* The Clerk of the Court is directed to amend the official caption to conform to the listing of parties above.

SUSAN BENNETT GREEN, Trial Attorney, Civil Division (Tony West, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director), United States Department of Justice, Washington, DC, for Respondent Eric H. Holder Jr. in Song v. Holder, 09-3694-ag.

DENNIS JACOBS, Chief Judge:

These petitions, heard in tandem, are filed by Chinese citizens who testified that they suffered persecution for violating a Chinese law that prohibits the provision of assistance to North Korean refugees. We must decide whether such persecution can be classified as on account of political opinion. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A) (asylum); 8 U.S.C. § 1231(b)(3)(A) (withholding of removal). The orders of removal were issued July 21, 2009 and August 11, 2009 by the Board of Immigration Appeals ("BIA"). Because the BIA failed to consider a number of relevant facts, Jin Jin Long's petition is granted; the order of removal is vacated, and his case remanded to the Board for further proceedings consistent with this opinion. On remand, the BIA (while considering the facts as directed) should determine whether there is a

3

law barring assistance to North Koreans,[1] and (whether there is or is not) in what circumstances persecution of those who assist North Korean refugees would constitute persecution on account of a protected ground. Ri Quan Song's petition is denied.

# I

According to the petitioners' (inexpert) testimony, Chinese law prohibits giving assistance to North Korean refugees. Both petitioners provided such assistance, suffered at the hands of the Chinese government, and contend that they suffered persecution on account of political opinion.

# A

Jin Jin Long is a Chinese national who resided until 2006 in Jilin Province, near the North Korean border. On February 7, 2005, he answered a knock on his door and encountered a family of North Korean refugees seeking aid

---

[1] The Ninth Circuit concluded in <u>Xun Li v. Holder</u> that the evidence presented to the Immigration Judge there required a finding that there is no Chinese law barring assistance to North Koreans. 559 F.3d 1096, 1110-11 (9th Cir. 2009).

4

for a sick member.  Though he believed it was illegal to do so, Jin provided food, clothing, and shelter for a week, after which he purchased train tickets for the family's travel onward.

On December 17, 2005, Jin was detained by the police and questioned about the North Korean refugees he had helped.  He was held for eleven days, during which time he was beaten repeatedly on his arms and back with electric batons.  The police accused him of participating in a human-smuggling ring--a charge he denied and claims was fabricated.  He was never formally charged or brought before a judge.  He was released only when his wife paid the officers 4000 yuan.

Jin left China with his wife in February 2006, fearing further harassment by the Chinese police.  He entered the United States without inspection some months later.

Jin was found credible.  But the BIA denied his applications for asylum and withholdi g of removal on the ground that he had failed to establish the required nexus between his asserted political opinion and the alleged persecution, and that he was therefore ineligible for asylum

5

and withholding of removal.[2]  This petition for review timely followed.

**B**

Ri Quan Song is a Chinese national who resided until 2004 in Jilin Province, near the North Korean border.  His uncle married a North Korean refugee in 1997.

Song's uncle was arrested in 2003 and questioned about his wife.  Song's uncle was detained for three weeks, during which time he was repeatedly beaten.  He was released when the police were paid 3000 yuan.

Thereafter, Song arranged with a refugee organization to send his uncle's family (wife, daughter, and step-daughter) to South Korea.  Song accompanied them part of the way, to Beijing.  There, Song was informed by his wife that the police were asking after him and had arrested the man

---

[2] Jin also sought relief under the Convention Against Torture ("CAT"), United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (implemented by 8 C.F.R. §§ 1208.16-18).  That claim was denied because the Board concluded that he had failed to show a sufficient likelihood of torture were he to return to China.  Jin does not challenge the BIA's denial of his CAT claim here, and therefore forfeits objection to it. See, e.g., Yueqing Zhang v. Gonzales, 426 F.3d 540, 541 n.1 (2d Cir. 2005).

who had driven him and his relatives to Beijing. Song left China in March 2004, without returning home. He entered the United States without inspection some weeks later.

The BIA denied Song's application for withholding of removal, on two grounds: his failure to establish that his actions constituted the expression of a political opinion, and his failure to establish a sufficient nexus between a protected ground and the alleged persecution.[3] This petition for review timely followed.[4]

---

[3] Song also applied for asylum and CAT relief, both of which were denied. Neither claim survives here.

Song's asylum application was denied as untimely, and we lack jurisdiction to consider Song's challenge to that denial. Jurisdiction lies to review a BIA conclusion that an asylum application is untimely under 8 U.S.C. § 1158(a)(2)(B) or that untimeliness is not excused under 8 U.S.C. § 1158(a)(2)(D) only insofar as the petition requests review of "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); 8 U.S.C. § 1158(a)(3). Song's petition does neither. It argues only that "his delay was caused by the action of and cheating of his previous agent who . . . assured [Song] that the . . . asylum [application] was . . . [timely] filed." This argument challenges only the BIA's contrary factual finding.

Song's CAT claim was deemed forfeited by the BIA, and Song does not contest that ground of denial here.

[4] Song argues that the BIA erred by affirming the Immigration Judge's exclusion of certain evidence, affidavits from Song's wife and aunt. Those affidavits are duplicative of Song's testimony, and largely irrelevant to the grounds on which the BIA denied Song's application for

7

**C**

These petitions were argued in tandem because they implicate the same issue: In what circumstances--if any--may the enforcement of a law of general applicability (here, the apparent prohibition of assistance to North Korean refugees) constitute persecution on account of political opinion?

**II**

"Where, as here, the BIA does not adopt the decision of the [Immigration Judge (IJ)] to any extent, we review the decision of the BIA." Garcia-Padron v. Holder, 558 F.3d 196, 199 (2d Cir. 2009). "Legal issues, and the application of law to fact, are reviewed de novo." Castro v. Holder, 597 F.3d 93, 99 (2d Cir. 2010). And we review factual findings for substantial evidence, deferring "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). E.g., Shabaj v. Holder, 602 F.3d 103, 105 (2d Cir. 2010).

---

withholding of removal. Their exclusion (whether proper or not) was therefore harmless. See, e.g., Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (applying harmless error analysis); Corovic v. Mukasey, 519 F.3d 90, 96 (2d Cir. 2008) (same).

8

**III**

Eligibility for both asylum and withholding of removal requires that an applicant demonstrate a nexus between the persecution he alleges (or fears) and an asserted protected ground--here, "political opinion."  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A) (asylum); 8 U.S.C. § 1231(b)(3)(A) (withholding of removal); see also, e.g., Yueqing Zhang v. Gonzales, 426 F.3d 540, 544 (2d Cir. 2005). The applicant must demonstrate that his persecutors acted or will act in sufficient part because of his political opinion (either real or imputed), and not from some other impetus. INS v. Elias-Zacarias, 502 U.S. 478, 482-83 (1992); Osorio v. INS, 18 F.3d 1017, 1028-29 (2d Cir. 1994).

As a rule, the enforcement of generally applicable law cannot be said to be on account of the offender's political opinion, even if the offender objects to the law.  See, e.g., Zhang, 426 F.3d at 545 (noting that because an "applicant must . . . show . . . that the persecutor's motive to persecute arises from the applicant's political belief[,] . . . . [i]t follows . . . that where the applicant's political belief takes the form of opposition to a government policy or practice that is visited on the

9

population at large, mere subjection to that policy or practice will not itself qualify as persecution 'on account of' political opinion"). At the same time, prosecution that is pretext for political persecution is not on account of law enforcement. <u>Xun Li v. Holder</u>, 559 F.3d 1096, 1108-10 (9th Cir. 2009). Thus, someone who has been singled out for enforcement or harsh punishment because of his political opinion can show eligibility.[5] <u>See</u> <u>Vumi v. Gonzales</u>, 502 F.3d 150, 157-59 (2d Cir. 2007) (asking whether interrogation and punishment were "disproportionate to the crime, which would indicate persecution on grounds of political opinion rather than prosecution or legitimate law-enforcement interrogation" (internal quotation marks omitted)); <u>Zhang</u>, 426 F.3d at 547 (determining that if applicant could show that fines and business license revocations were "an attempt to repress his challenge to the government's legitimacy," then he could show eligibility); <u>Islami v. Gonzales</u>, 412 F.3d 391, 396 (2d Cir. 2005) (noting that while "compulsory military service" typically "does not provide asylum seekers with adequate cause for claiming

---

[5] Such singling out, moreover, may be on account of a person's opposition to a particular law or policy; the opposition need not extend to encompass the entire regime.

10

persecution," eligibility can be shown "if an individual's refusal to serve in the military leads to disproportionately excessive penalties, inflicted on him or her because of that individual's . . . political opinion"), overruled in part on other grounds, Lin v. U.S. Dep't of Justice, 494 F.3d 296, 305 (2d Cir. 2007) (in banc).  Facts must be carefully sifted in context to ascertain whether there is a sufficient political element to the alleged persecution.  E.g., Osorio, 18 F.3d at 1029 (ruling that the BIA erred by concluding that an applicant's labor dispute with his government was economic and non-political without "examin[ing] []either the political dimension of th[e] dispute []or its political context"); Islami, 412 F.3d at 396 (noting that while "compulsory military service" typically "does not provide asylum seekers with adequate cause for claiming persecution," "an individual may be eligible for asylum if he or she is fleeing to avoid punishment for refusing to join a 'military force condemned by the international community'").

**A**

In Jin's case, the BIA failed to consider a number of

11

facts that may support an inference that his arrest and detention were pretextual.  See, e.g., Castro, 597 F.3d at 99 (noting that substantial evidence "requires a certain minimum level of analysis from the IJ and BIA, as well as some indication that the IJ considered material evidence supporting a petitioner's claim" (internal quotation marks omitted).  Jin testified that his conduct was humanitarian or charitable, and did not cast his motives as political.  But a humanitarian or charitable act may signify a humanitarian or charitable conviction; and a government might construe violation of a law as opposition or resistance to the law's underlying policy, and punish it accordingly.  It is unknown what the lawful penalty may be for assisting North Korean refugees.  But the following facts may support an inference that what Jin suffered was not entirely the enforcement of a penal statute.

Jin testified (credibly) that the refugee-smuggling allegations underlying his arrest were fabrications.  He was never formally charged or brought before a judge.  See Li, 559 F.3d at 1109 ("[T]he distinction between persecution and prosecution is less than clear cut when the 'prosecution' lacks legitimacy or proceeds without the process normally

12

due.").  Yet, though neither charged nor presented in court, he was subjected to prolonged detention and repeated physical abuse.  See, e.g., Vumi, 502 F.3d at 158 (holding that "interrogation and punishment" that is "disproportionate to the crime . . . would indicate persecution on grounds of political opinion rather than prosecution or legitimate law-enforcement interrogation" (internal quotation marks omitted)).  Moreover, U.S. State Department country reports on China suggest that the North Korean refugee issue is politically charged.  See, e.g., Osorio, 18 F.3d at 1029 (requiring consideration of a dispute's context).  The Chinese government has apparently arrested numerous activists, missionaries, and others--both foreign and Chinese--for assisting North Korean refugees.  See generally Kang v. Att'y Gen. of the United States, 611 F.3d 157, 160-62 (3d Cir. 2010).  This can be seen as enforcement of the law (assuming there is a law prohibiting assistance to North Korean refugees), but it may also suggest an active resistance to China's North Korean immigration policies, and an attempt at suppression.  Jin's actions may have been viewed by the Chinese authorities as part of this resistance, and the BIA should therefore have

13

considered the facts in that light.

Accordingly, Jin's petition for review is granted; the order of removal is vacated, and his case is remanded to the BIA for consideration of these facts in the first instance. See, e.g., Castro, 597 F.3d at 100; Zhang, 426 F.3d at 548-49. If the BIA determines on remand that there was no penal law barring assistance to North Korean refugees, it shall also consider whether the absence of such a law strengthens the petitioner's contention that he was persecuted for political reasons rather than punished for legitimate law enforcement purposes.

**B**

Song has not argued that the Chinese authorities imputed any political opinion to him.[6] Song's petition therefore fails on the essential ground that there is little (if any) evidence that he acted from a political motive. He testified that he did not believe that assisting North Korean refugees was illegal until after his assistance was

---

[6] An imputed political opinion claim not raised administratively is unexhausted, and will not be considered here. See, e.g., Lin v. U.S. Dep't of Justice, 453 F.3d 99, 105 n.3 (2d Cir. 2006).

completed.  (He then fled China before ever encountering the authorities investigating his conduct.)  He evidently acted on the independently sufficient motive of family loyalty and concern for his uncle, aunt, and cousins.  That motivation does not qualify him for political asylum.  See Elias-Zacarias, 502 U.S. at 482.  The record would not support an inference or raise a suspicion that he acted politically to oppose the law that he was violating.

**IV**

For the foregoing reasons, Jin's petition is granted; the order of removal is vacated, and his case is remanded to the BIA for further proceedings consistent with this opinion.  On remand, the BIA (while considering the facts as directed) should determine whether there is a law barring assistance to North Koreans, and (whether there is or is not) in what circumstances persecution of those who assist North Korean refugees would constitute persecution on account of a protected ground.  Song's petition is denied.

15