ROTH, Circuit Judge,
Dissenting:
The Majority and I agree that there is a glaring omission in the record: evidence of the generally applicable law that the BIA cited as the source of China’s interest in Li. The Majority tries to pin this omission on Li. However, it is not Li who is arguing that any generally applicable law is involved here. The Immigration Judge did not discuss any such law or rely upon one in its decision granting withholding of removal. Mention of a generally applicable law appears in the record before us for the first time in the government’s brief before the BIA. The government has not, however, indicated what specific law it had in mind. Because it is the government that is arguing that China seeks to prosecute Li under a law of general applicability, it is the government that must bear the initial *148 burden of identifying the law it has in mind and producing evidence to support its theory. The omission in the record of a generally applicable law does not count towards the ultimate burden Li bears in establishing his claim for withholding of removal. To the contrary, this omission eviscerates the government’s argument for denial of the petition for review.
Moreover, the record before us suffices to support Li’s petition and compels three essentials conclusions: (1) Li manifested his political opinion in assisting North Korean refugees; (2) he faces a clear probability of enduring treatment severe enough to amount to persecution; and (3) his political opinion serves as at least one central reason China seeks to persecute him. Li’s petition does not depend on his demonstrating a law of general applicability. For these reasons, I respectfully dissent.
A. Li’s Political Opinion
The record clearly establishes that Li held a political opinion in opposition to China’s policy towards North Korean refugees. The instant case invokes Chang v. I.N.S., 119 F.3d 1055 (3d Cir.1997), where we confronted a petition for asylum and withholding of removal from a Chinese national who had violated China’s generally applicable exit laws and refused to report others who had violated those same laws. There, we stated:
To argue that Chang is prosecuted merely for “breaking the law” and not on “political” grounds is to turn a blind eye to the motives of the government. Those motives are, at least in part, to punish those, like Chang, who have manifested opposition to the policy of the Chinese government and to prevent others from taking similar political actions.
Chang, 119 F.3d at 1065. While the standards for granting asylum and withholding of removal have shifted in the years since, Chang retains its salience today and applies with equal force to the instant Petition for Review.
By assisting North Koreans refugees not for monetary compensation, but because he sympathized with their plight, Li manifested his opposition to the policies of the Chinese government. See id. The Majority presents a false choice between Li’s humanitarian and political motivations. See ante, I44-45. In this case, as 'in Chang, the two are one and the same. In his testimony before the IJ and in the affidavit submitted with his asylum application, Li demonstrated that he is acutely aware of the poverty and starvation endemic to North Korea and that he believes China is “obligated to ... protect human rights and provide asylum to the [North Korean] refugees.” (A.R. 291 (affidavit); see also A.R. 161 (testimony).) Li’s actions, moreover, speak louder than his words. Despite the risk of grave punishment, Li’s willful disobedience of China’s policy towards North Koreans based on conscientious — rather than pecuniary— motives indicates a political belief. In other words, a humanitarian action in knowing violation of a state policy constitutes opposition to that policy, and therefore, reflects a political belief.[1] A conclusion to the contrary all but abandons Chang. See 119 F.3d at 1065.
B. A Clear Probability of Being Subjected to Persecution
The assertion that Li failed to establish by a clear probability that he would be subject to persecution is not reasonably *149 grounded in the record. Rather, the record demonstrates that the Chinese government knows of Li’s assistance, threatens punishment severe enough to constitute persecution, and maintains an interest in arresting him. At the merits hearing, Li testified that, while in hiding after his escape from police, he learned from his mother that police had visited their home to arrest him. (A.R.165, 167.) In a subsequent letter to Li, his mother mentioned again that the police seek to arrest Li for the assistance he provided to North Koreans who had crossed into China. (A.R.179, 237.) Li further testified that his fellow dissidents received ten-year jail terms and that he likely would receive the same punishment if he were to return. (A.R.165, 168).[2] Thus, as the Majority all but says outright, the BIA incorrectly concluded that Li “did not show that the Chinese government was aware he was involved in the smuggling operation.” Ante, 137 (citing A.R. 4); see also Kang, 611 F.3d at 163-64, 166 (concluding that the substantial evidence standard called for reversal of BIA’s findings where BIA appeared to ignore forceful evidence in support of applicant).
The harm Li fears from the Chinese government — ten years of imprisonment— amounts to a deprivation of freedom that rises to the level of persecution. “Our oft-quoted, non-exclusive list of examples of persecution ‘include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.’ ” Cheng v. U.S. Atty. Gen., 623 F.3d 175, 192 (3d Cir.2010) (quoting Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir.1993)). Ten years of imprisonment constitutes a period of confinement greater than past instances where this Court found persecution. See Chang, 119 F.3d at 1067 (concluding that punishment of up to one year of imprisonment is “sufficiently severe to constitute ‘persecution’ under this Circuit’s standard.... ”); see also Gomez-Zuluaga v. U.S. Atty. Gen., 527 F.3d 330, 342 (3d Cir.2008) (finding that abduction and eight-day confinement, during which she was threatened, tied to a bed, and blindfolded, rose to the level of persecution); Li Wu Lin, 238 F.3d 239, 248 (3d Cir.2001) (finding that “a year and a half incarceration and forced labor for a fifteen-year old who voiced opposition to the government” constituted a sufficiently severe deprivation that amounted to persecution).
Despite the BIA’s error in concluding that the Chinese government was not aware of Li’s involvement in the operation, the Majority stills finds that the record does not demonstrate a clear probability of persecution. In reaching this conclusion, the Majority notes that Li successfully applied for and obtained a Chinese passport from the Chinese Consulate in New York, suggesting that China’s interest in persecuting Li has dissipated. See ante, 147 (citing A.R. 182-83.). But the Majority omits that Li paid a “broker” to accompany him to the Consulate and to ensure that he would be able to obtain a passport. This undermines the use of this evidence to support the inference that China has lost interest in Li. (A.R.132, 182-84.)[3] In *150 addition, the ten years of imprisonment that Li potentially faces indicates how severely China may punish such conduct and renders it unlikely that China would disregard such a perceived offense. Moreover, there is no evidence in the record that China’s interest in persecuting Li has lessened with time, nor of any amelioration in China’s treatment of those who assist North Korean refugees. (A.R.168.)
C. Political Opinion as at Least One Central Reason for Persecution
In reaching its conclusion, the Majority ultimately relies on the BIA’s finding that Li did not face persecution, but prosecution under a generally applicable law. In my view, this finding reads too far into a sparse record and oversimplifies the distinction between persecution and prosecution.
First, the record is remarkably silent on the generally applicable law that Li supposedly defied. And the BIA did not point to any provision of Chinese law that Li violated in concluding that China sought to prosecute, not persecute, Li under a law of general applicability. As the Second Circuit recognized in Long v. Holder, this point alone merits remand to the BIA and, pursuant to 8 CFR § 1003.1(d)(3)(iv), possible remand to the Id, for further consideration of the relevant Chinese law. 620 F.3d 162, 164, 168 (2d Cir.2010). The only evidence that Li violated any law at all comes from his own, limited testimony to that end. See ante, 139 (citing A.R. 128-29, 157.). But Li is not a lawyer and did not state what law he violated. It appears the only reason he thought he did something illegal was because other members of his organization had been imprisoned. Moreover, even if Li’s testimony is literally true, it does not establish that he violated a law that carries a penalty of ten years in prison.
This gap in the record is particularly troubling in light of Li v. Holder, 559 F.3d 1096, 1111 & n. 15 (9th Cir.2009), which found that there is no Chinese law punishing assistance to North Korean refugees. Although the Ninth Circuit found that smuggling of refugees is an offense in China, see id. at 1111 n. 15, the record does not establish that Li participated in smuggling North Korean immigrants across the border. It is admittedly conceivable that, as the Majority and the BIA appear to have assumed, China’s smuggling law is drafted broadly enough to reach Li’s conduct.[4] But in the absence of the text of the law or evidence about its scope, this conclusion cannot be based on substantial evidence. This assumption is all the more suspect, as record evidence demonstrates that Li held a political motivation for supporting the immigration of North Koreans, and documents China’s practice of harshly punishing individuals accused of assisting North Korean refugees for political motives. (See A.R. 207-09.)
*151 Second, the Majority overlooks several nuances in the distinction between prosecution and persecution. The Majority correctly states that prosecution under a generally applicable law would not necessarily amount to persecution. Ante, 141. But where prosecution is a mere pretext for persecution, the existence of a generally applicable law must not be allowed to cloak the government’s true intent. In the present case, the Majority and the BIA have failed to adequately consider the possibility of pretext. The record compels the conclusion that Li’s political opinion, ie., his humanitarian interest in assisting North Korean refugees despite China’s official policy toward those refugees, along with the action he took consistent with that opinion, was at least one central ground for the Chinese government’s attempt to arrest him and its continued interest in him.
While enforcement of a law of general applicability — even against an offender who objects to the law because of his political opinion — might not be on account of a protected ground, pretextual prosecution on the basis of political opinion is. See Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir.2004); see also Long v. Holder, 620 F.3d 162, 166-68 (2d Cir.2010) (distinguishing persecution from prosecution); Li v. Holder, 559 F.3d 1096, 1108-09 (9th Cir.2009) (same). In the present case, the record demonstrates that China seeks to disproportionately punish Li as a result of his political opinion. China, thus,'does not fairly administer the purported law at issue.
To begin with, disproportionately severe punishment may indicate that a prosecution is a mere pretext for persecution. Shardar, 382 F.3d at 323.[5] On this point, Li’s testimony that his colleagues received jail sentences of ten years demonstrates that the punishment Li feared was disproportionate to the alleged crime — assistance to North Korean refugees. Indeed, as the Chinese government began to crack down on North Korean refugees, those Chinese citizens who had assisted North Korean refugees were punished only with fines in the $3,600 range. (A.R.215.) At a minimum, the BIA should have considered whether the ten-year sentence Li faced was so disproportionate as to constitute persecution by means of a pretextual prosecution. See Long, 620 F.3d at 166-68 (citing cases where disproportionate punishment or selective enforcement of a law amounted to persecution on a protected ground).
Moreover, this evidence of disproportionate punishment indicates that the purported law at issue is not fairly administered, and thus should not be considered a law of general applicability. The Majority recognizes that “[a]s a general matter ... we have held that fear of prosecution for violations of ‘fairly administered laws’ does not itself qualify one as a ‘refugee’ or make one eligible for withholding of [removal].” Ante, 141 (quoting Chang, 119 F.3d at 1060 (citations omitted)); see also Shardar, 382 F.3d at 323 (quoting Chang for the same proposition). Here, however, China’s exceptionally unfavorable application of the purported law to Li — when compared with *152 mere fines it assessed to other alleged violators — indicates unfair administration. See Janusiak v. I.N.S., 947 F.2d 46, 48-49 (3d Cir.1991) (noting that prosecution may amount to persecution on account of a protected ground where petitioner “would be treated differently than other violators of [a] law because of [petitioner’s] political leanings”). Thus, assuming a law exists that prohibits Li’s conduct, China’s selective and severe enforcement of the law reveals that in some circumstances China uses enforcement of the law as a pretext for persecuting political dissenters, not simply to implement rational immigration policy.
As discussed above, over the past year the Second and Ninth Circuits have addressed the persecution of Chinese citizens for humanitarian assistance provided to North Korean refugees. Both circuits found that the BIA, in denying petitions for review, failed to consider a number of factors indicating pretextual prosecution. See Long v. Holder, 620 F.3d 162, 164 (2d Cir.2010) (vacating and remanding for BIA’s failure to consider whether prosecution of a Chinese citizen for assisting North Korean refugees may have been pretextual); Li v. Holder, 559 F.3d 1096, 1108-09 (9th Cir.2009) (finding error in BIA’s conclusion that petitioner is a mere criminal subject to legitimate prosecution, because police persecuted petitioner for providing aid to North Korean refugees and for expressing opinions contrary to Chinese policy). Like the petitioners in those cases, Li faces persecution under the guise of “prosecution” for his efforts to help North Korean refugees. The harsh punishment suffered by those who worked with Li to help North Korean refugees demonstrates the likelihood that China will persecute Li on account of his political beliefs. The BIA erred in failing to consider this possibility and the considerable record evidence supporting it. See Espinosa-Cortez v. U.S. Atty. Gen., 607 F.3d 101, 113-14 (3d Cir.2010) (“An applicant for asylum is entitled to a reasoned analysis, not one which wholly disregards relevant, probative evidence.”)
In short, the evidence before us does not support the Majority’s conclusion that Li has failed to establish persecution because there may be a generally applicable Chinese law that might criminalize his conduct and could be fairly applied to result in a proportionate punishment of ten years. The record does not contain the text of this law, the Ninth Circuit cast doubt on the existence of any law punishing Li’s conduct, see Li, 559 F.3d at 1111 n. 15, and the only available record evidence shows that China’s treatment of immigration by North Koreans and of assistance to such immigrants is harsh, politicized, and far from evenhanded. There is insufficient evidence to support the BIA’s finding that Li faced prosecution under a generally applicable law. I would therefore follow the course of the Second Circuit and remand for further factfinding on this issue.[6] See Long, 620 F.3d at 164, 168.
*153 For the reasons stated above, I would grant Li’s Petition for Review, and vacate and remand this case to the BIA for further action consistent with this dissent.

. I note that Li's actual political opinion, or China's knowledge of his actual political opinion, may be inconsequential where China has imputed one to him. See Espinosa-Cortez v. U.S. Atty. Gen., 607 F.3d 101, 108-09 (3d Cir.2010).

. We must credit Li’s testimony. Where, as here, "an IJ or the BIA fails to make an explicit credibility finding, [the Court] ... proceed[s] as if the applicant's testimony were credible.” Toure v. U.S. Atty. Gen., 443 F.3d 310, 326 (3d Cir.2006).

. I note further that, even if Li had not relied on the assistance of a "broker,” China’s willingness to issue Li a passport is consistent with an intent to persecute Li. Granting Li’s passport application would increase Li’s likelihood of returning to China, which would provide the Chinese government the best opportunity to apprehend him. Refusing to *150 grant the passport application would prevent Li from entering China on his own volition and therefore prevent China from arresting Li.

. The Majority's speculation about Chinese law based on United States law providing criminal penalties for bringing in, transporting, or harboring aliens simply underscores the lack of evidence in the record. See ante, 144. As Chang and the numerous cases granting asylum to Chinese citizens establish, China's laws can be very different from our own, thus making persuasive comparisons unlikely. Even if our law were somehow relevant here, because Li obtained no private financial gain from transporting aliens, he would have faced at most a five-year prison sentence under United States law, see 8 U.S.C. § 1324(a)(1)(B)(ii), and probably much less than that under the United States Sentencing Guidelines.

. Both the Second and Ninth Circuits have devoted considerable attention to this theory. See, e.g., Vumi v. Gonzales, 502 F.3d 150, 158 (2d Cir.2007) (noting that the BIA failed to consider whether punishment was "disproportionate to the crime, which would indicate persecution on grounds of political opinion rather than prosecution or legitimate law-enforcement”) (internal quotation omitted); Chanco v. I.N.S., 82 F.3d 298, 302 (9th Cir.1996) (“Although prosecution for a common law crime will not ordinarily constitute persecution, a showing of disproportionate punishment may support a claim that the prosecution is a pretext for persecution on account of political opinion.”).

. If this case were to be remanded, I also would direct the BIA to consider whether Li has established that "there is a pattern or practice of persecution of a group of persons similarly situated to him on account of a protected ground and that he is included in, or identified with, the persecuted group such that it is more likely than not that his life or freedom would be threatened if he returned.” In re A-M-, 23 I. & N. Dec. 737, 740-41 (B.I.A.2005) (analyzing 8 C.F.R. § 1208.16(b)(2)); see also Wong v. U.S. Atty. Gen., 539 F.3d 225, 232-34 (3d Cir.2008) (discussing evidence of a "pattern or practice” of persecution in the context of an asylum claim); Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir.2005) (same). There are reports in the record of the harsh Chinese crackdown on individuals, like Li, who assist *153 North Korean refugees, which may evidence such a pattern or practice. (See A.R. 207-09.)