10-3543-ag
Xiong Jin v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of January, two thousand twelve.

Present:     ROSEMARY S. POOLER,
             DEBRA ANN LIVINGSTON,
             RAYMOND J. LOHIER, JR.,
                     *Circuit Judges*.

_____

XIONG JIN,

                             *Petitioner*,

                -v.-                                    10-3543-ag

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,

                             *Respondent*.

_____

Appearing for Petitioner:     Aaron Louis Lebenger, Jim Li, New York, N.Y.

Appearing for Respondent:     Allison Frayer, Trial Attorney, Office of Immigration Litigation, Civil Division; Tony West, Assistant Attorney General, Civil Division; Leslie McKay, Assistant Director, Office of Immigration Litigation; United States Department of Justice, Washington, D.C.

Petition for review of an order of the Board of Immigration Appeals ("BIA").

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **GRANTED**.

Xiong Jin petitions for review of the August 2, 2010 decision by the BIA dismissing his appeal of the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT relief"). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"Where the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." *Santoso v. Holder*, 580 F.3d 110, 111 (2d Cir. 2009). We review legal issues and the application of law to fact de novo. *See, e.g.*, *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir. 2010). We review findings of fact under the substantial evidence standard, and we defer to the agency's findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Jin Jin Long v. Holder*, 620 F.3d 162, 166 (2d Cir. 2010) (quoting INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)). Substantial evidence, however, "requires a certain minimum level of analysis from the IJ and BIA, as well as some indication that the IJ considered material evidence supporting a petitioner's claim." *Id.* at 167 (quoting *Castro*, 597 F.3d at 99). In particular, "IJs and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim." *Poradisova v. Gonzales*, 420 F.3d 70, 81 (2d Cir. 2005). Indeed, "[t]his Court will *vacate* BIA conclusions, as to the existence or likelihood of persecution, that a perfectly reasonable fact-finder *could* have settled upon, insofar as the BIA either has not applied the law correctly, or has not supported its findings with record evidence." *Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir. 2007) (internal quotation marks omitted).

To establish persecution on account of political opinion, an applicant must show "that the persecution arises from his or her own actual or imputed political opinion." *Koudriachova v. Gonzales*, 490 F.3d 255, 263 (2d Cir. 2007). "The applicant must also show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's political belief." *Castro*, 597 F.3d at 100 (quoting *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005) (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992))).

As to the BIA's conclusion that Xiong Jin could not establish the requisite nexus between his beliefs and his arrest because he had been arrested for a crime of general applicability, we addressed this issue in *Jin Jin Long*. *See Jin Jin Long*, 620 F.3d at 166 ("In what circumstances—if any—may the enforcement of a law of general applicability (here, the apparent prohibition of assistance to North Korean refugees) constitute persecution on account of political opinion?"). Here, the BIA erred by failing adequately to consider the issues raised in *Jin Jin Long*, specifically: (1) whether there was evidence based on Xiong Jin's treatment and the political context for his arrest that the arrest was pretextual, and (2) whether there was in fact a law prohibiting aid to North Korean refugees.

2

Although the BIA was correct in recognizing that "the enforcement of generally applicable law cannot be said to be on account of the offender's political opinion, even if the offender objects to the law," the BIA failed to recognize that "prosecution that is pretext for political persecution is not on account of law enforcement." *Id.* (citing *Xun Li v. Holder*, 559 F.3d 1096, 1108-10 (9th Cir. 2009)). "Thus, someone who has been singled out for enforcement or harsh punishment because of his political opinion can show eligibility." *Id.* In conducting such an analysis, the BIA must "carefully sift[]" the facts in context "to ascertain whether there is a sufficient political element to the alleged persecution." *Id.* at 167.

Applying these principles in *Jin Jin Long*, we remanded Long's case to the BIA because the "BIA failed to consider a number of facts that may support an inference that his arrest and detention were pretextual," particularly that: (1) he credibly testified that the allegations of refugee-smuggling that underlay his arrest were fabricated; (2) he was never formally charged or brought before a judge; (3) he was subjected to eleven days of detention and repeated physical abuse, though never charged with a crime; (4) State Department country reports "suggest that the North Korean refugee issue is politically charged;" and (5) the Chinese government has arrested many "activists, missionaries, and others" for assisting North Koreans, a fact which may "suggest an active resistance to China's North Korean immigration policies, and an attempt at suppression," and "Jin[ Jin Long]'s actions may have been viewed by the Chinese authorities as part of this resistance." *Id.*

In this case, the BIA erred both by failing to acknowledge that "prosecution that is pretext for political persecution is not on account of law enforcement," *Jin Jin Long*, 620 F.3d at 167, and by failing to "sift[] [the facts] in context," *id.*—that is, to consider the political context of Xiong Jin's arrest. Like the petitioner in *Jin Jin Long*, Xiong Jin credibly testified that he was detained for several days and beaten, released only after a family member paid a bribe, and never formally charged with any crime. Also before the agency was a 2007 Congressional Research Service Report ("CRS Report"), entitled *North Korean Refugees in China and Human Rights Issues; International Response and U.S. Policy Options*, that Jin submitted as evidence that the issue of North Korean refugees in China is politically charged. The BIA failed to consider whether such cumulative facts "may support an inference that his arrest and detention were pretextual." *Jin Jin Long*, 620 F.3d at 167.

As to the IJ's conclusion that Xiong Jin did not provide evidence that he held a political opinion, "a claim of political persecution cannot be evaluated in a vacuum, . . . without reference to the relevant circumstances in which the claim arises." *Castro*, 597 F.3d at 106. "We have repeatedly emphasized the fallacy of this approach and have on several occasions remanded cases in which the agency denied an application for asylum based on its failure to properly engage in the 'complex and contextual factual inquiry' that such claims often require." *Id.* (citing *Vumi v. Gonzales*, 502 F.3d 150, 157 (2d Cir. 2007); *Osorio v. INS*, 18 F.3d 1017, 1030 (2d Cir. 1994); *Yueqing Zhang*, 426 F.3d at 546).

The BIA and the IJ in this case "embraced an 'impoverished view of what political opinions are, especially in a country . . . where certain democratic rights have only a tenuous hold,' by rejecting [the petitioner]'s claim without any coherent examination of the surrounding political environment." *Castro*, 597 F.3d at 106 (quoting *Yueqing Zhang*, 426 F.3d at 546) (citations omitted) (omission in original). The IJ concluded that "the main reason that [Xiong Jin] was helping this particular individual was because he felt that the people in North Korea were less fortunate than others because the lack of food and the poor conditions that these individuals are facing in North Korea. No evidence was provided that [Xiong Jin] himself was against the government of China in any way or form." In reaching this conclusion, however, the IJ failed to make the inquiry described in *Castro* and in *Jin Jin Long*, and ignored the CRS Report, which provided evidence of the political context for Xiong Jin's actions and his arrest. According to the report, North Koreans are crossing the border to China based on "deteriorating humanitarian conditions—mainly due to food shortages—and human rights violations," but, even though China is a party to the Refugee Convention and Protocol, it has not allowed United Nations agencies to have access to North Koreans in China "because it views these individuals as economic migrants (rather than political refugees) who cross the border illegally, primarily in search of food." Further, the report states that China generally does not allow North Koreans to apply for political asylum and "China's deportations [of North Koreans] raise the question of a violation of international law," because China is obligated under the Refugee Convention, under the principle of non-refoulement, not to deport people who qualify as refugees to a country where they will be persecuted. In 2006, the U.N. High Commissioner for Refugees raised these issues with the Chinese Foreign Ministry.

The evidence in the CRS Report is material to analyzing Xiong Jin's testimony. For example, Xiong Jin testified that he sheltered Chende "[b]ecause he was a Korean refugee, because [Xiong Jin] [felt] very sympathy and . . . wanted to help him." Considered in light of the evidence of the political context in China, Xiong Jin's description of his relative as a "refugee" and expression of sympathy for the plight of "North Korean refugees" as a group arguably expresses a political opinion, because China refuses to acknowledge refugees; that Xiong Jin viewed Chende as a refugee implies that he believed Chende had a right to remain in China notwithstanding China's policies. Further, Xiong Jin stated that he did not feel he committed a crime, and that it was China that committed a crime. Viewed in light of the political context of China's policies toward North Korean refugees, Xiong Jin may have been expressing the belief that China's policy toward North Korean refugees was wrong, even if Xiong Jin did not describe this view as a "political" opinion. Similarly, when asked if he was assisting Chende in committing a crime by helping him to stay in China, Xiong Jin said he was not, because they "did not even have sufficient food in North Korea."

There is nothing in either the IJ's or the BIA's opinion that would allow us to conclude that they considered the circumstances of Xiong Jin's arrest, detention, and treatment in light of the situation of North Korean refugees in China when denying Xiong Jin's asylum claim. Indeed, neither the IJ nor BIA explicitly referred to the CRS Report in discussing Xiong Jin's claim of persecution based on his political opinion, even though "IJs and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim." *Poradisova*, 420 F.3d at 81.

4

We therefore remand to the BIA for reconsideration of Xiong Jin's application for asylum, withholding of removal, and CAT relief in light of this order.

For the foregoing reasons, the petition for review is GRANTED and the proceedings REMANDED to the BIA for further consideration consistent with this order. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk